**INTEL CORPORATION,**
**Plaintiff–Appellant,**

v.

**ADVANCED MICRO DEVICES,**
**INC., Defendant–Appellee.**

No. 92–16899.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 13, 1993.

Decided Dec. 28, 1993.

---

Michael F. Bailey, Brown & Bain, Phoenix, AZ, for plaintiff-appellant.

Robert B. Morrill, Skjerven, Morrill, MacPherson, Franklin & Friel, San Jose, CA, for defendant-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE,* District Judge.

REINHARDT, Circuit Judge:

Intel Corporation (Intel) appeals the district court's order staying its copyright action against Advanced Micro Devices, Inc. (AMD). The stay was granted pending final state court appellate review of an arbitration award of license that, if upheld, would provide AMD with a defense to Intel's claims of copyright infringement. Because we do not find that exceptional circumstances exist justifying a "wise judicial administration" stay under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and because the stay cannot be upheld on the alternative grounds suggested by AMD, we re-verse the stay order and remand to the district court for further proceedings.

## BACKGROUND

Intel and AMD are semi-conductor companies which design, produce and market microprocessors. A common practice within the microprocessor industry is the "second sourcing" arrangement, by which the creator of a newly developed product will license rights to manufacture the product to another company, receiving a royalty in return. Although both companies then market the same product in competition with one another, the existence of a second source for the new product reassures customers and, in theory, leads to a greater market share for both companies.

In 1981, Intel approached AMD regarding a second sourcing arrangement for the Intel 8086 microprocessor. After protracted negotiations, the parties signed a contract in February 1982, later amended in 1984, which stated the terms by which each party could earn the rights to manufacture the other's product. It was, in effect, a reciprocal second sourcing agreement: if one party wanted to market parts the other party had developed, it could offer parts that it had developed in exchange. The exchanged parts were rated using a system of complexity factor (CF) points, which created a form of currency for the transactions.

Intel gave AMD immediate rights to second source its 8086 microprocessor, but AMD's right to acquire later Intel products was dependent upon AMD acquiring the CF points necessary to "purchase" them. However, by the time that Intel's 80386 microprocessor (the 386) entered the market, Intel had largely failed to accept AMD products, leaving AMD without the CF points needed to acquire rights to the 386.

By 1986, AMD realized that Intel was not going to permit it to second source the 386, which had become the industry standard in microprocessors. Pursuant to an arbitration provision in the contract, AMD filed a petition in state court to compel arbitration, al-

---

* The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

leging breach of contract. The petition was granted in August 1987 and arbitration hearings before a retired judge began.[1]

AMD's position in the arbitration was that Intel had deliberately frustrated the contract. AMD asserted that Intel had wrongly prevented AMD from getting rights to the 386 by refusing to accept AMD parts in exchange. According to AMD, the contract had created a partnership or joint venture between AMD and Intel that obligated Intel to license AMD products. Alternatively, AMD claimed that Intel had wrongly reneged on its bargain to take certain AMD parts. Either way, AMD claimed to be entitled to the Intel 386.

The arbitrator disagreed with AMD's interpretation of the contract. He found that AMD had no rights to the 386 microprocessor under the contract, because the contract "simply created a modus vivendi for the exchange of product between the two companies," creating no obligation for either company to take the other's products. He nonetheless agreed with AMD that Intel had breached the contract. Even though Intel had the right not to accept AMD products, the covenant of good faith and fair dealing required that this decision be taken openly. According to the arbitrator, Intel had breached this covenant by trying to deceive AMD into believing that product exchanges would continue, with the motive of "keeping AMD in the Intel 'camp,' of keeping AMD away from some sort of partnership with another company—say NEC or Fujitsu— where AMD's talents might be used in effective competition against Intel."

By late 1990, AMD had begun marketing a 386 microprocessor called the Am386. In October 1991, just prior to the close of the remedies phase of the arbitration, Intel commenced this federal court action against AMD for copyright infringement. Intel charged AMD with reverse-engineering Intel's 386 microprocessors and copying the computer programs contained in them. As a remedy for this alleged copyright infringement, Intel asked for an injunction prohibiting AMD from further use of the disputed computer programs, the impounding of existing copies of the programs, and damages.

In February 1992, after almost five years of hearings, the arbitrator handed down his award. In addition to awarding AMD damages under the contract, he granted AMD the equitable remedy of "a permanent, royalty-free, non-exclusive, non-transferable, worldwide right (but not the right to assign, license or sublicense such right to any other party) under any and all Intel copyrights, patents, trade secrets and maskwork rights contained in the current versions of AMD's reverse engineered 80386 family of microprocessors." He explained that his purpose in awarding this right was:

> to provide a complete and dispositive defense to AMD as to the Intel claims against AMD regarding the technology and intellectual property used in AMD's current versions of the 80386 in such lawsuits as *Intel Corp. v. Advanced Micro Devices, Inc.* (A 91 CA 800) in the United States District Court for the Norther[n] District of California, and *Intel Corp. v. Advanced Micro Devices, Inc.* (C 90 20571 WAI) in the United States District Court for the Northern District of California, and to preclude and defeat other potential Intel intellectual property infringement claims with respect to the technology used in AMD's aforedescribed past and current versions, and future revisions and modifications, of the 80386.

The arbitrator elaborated further on the reasons supporting what he conceded was an unconventional approach to relief in his Memorandum of Decisions re Issues in Award. Complaining of the parties' abuse of the court system, he said that the award was meant to "abort the incessant [legal] warfare

---

1. The parties stipulated in their Order of Reference to Arbitration that the arbitrator would could award remedies "as he may in his discretion determine to be fair and reasonable but not in excess of his jurisdiction." Similarly, the Informal Rules of Arbitration adopted by the parties state that the arbitrator has authority to "grant any relief which the Arbitrator deems just and equitable and within the scope of agreement of the parties, including, but not limited to, specific performance of a contract."

which has gone on between these two companies for the past five years."[2]

In March 1992, AMD filed a petition in the Superior Court of California to confirm the arbitration award, and Intel filed a petition to correct the award. After a hearing, the state court confirmed the arbitration award in its entirety. AMD then filed a motion in the present federal action for summary judgment, or, in the alternative, a stay of proceedings. The magistrate judge granted AMD's motion for a stay of district court proceedings, relying on the "wise judicial administration" doctrine first enunciated in *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Contending that the stay was improperly granted, Intel now appeals to this court.[3] The stay order is appealable as a final order. *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 13, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (1983); *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir.1990).

## DISCUSSION

### I. The Merits.

Intel's action for copyright infringement is based on 17 U.S.C. § 106, which states that the owner of a copyright "has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work.... (2) to prepare derivative works based upon the copyrighted work." Intel meets AMD's affirmative defense of license by asserting that the arbitrator violated § 106 by simply awarding rights to the 386 microprocessor to AMD as an equitable remedy.

### II. Standard of Review.

A district court's stay order is reviewed for abuse of discretion. *Nakash v. Marciano*, 882 F.2d 1411, 1413 (9th Cir. 1989). However, courts have repeatedly emphasized that this abuse of discretion standard is stricter than the flexible abuse of discretion standard used in other areas of law. When a stay for reasons of "wise judicial administration" is contemplated, "discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved.... [T]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 540 (9th Cir.1985) (quoting *C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983)).

### III. The Colorado River Doctrine.

Considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" may counsel granting a stay when there are concurrent state proceedings involving the same matter as in the federal district court. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. The Supreme Court has stressed, however, that the *Colorado River* exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" is a narrow one. *Id.; see also Moses H. Cone*, 460 U.S. at 17, 103 S.Ct. at 937. Only exceptional circumstances justify such a stay, and whether these circumstances exist is determined by weighing a complex of factors. *Moses H. Cone*, 460 U.S. at 23–26, 103 S.Ct. at 941–42.

The *Colorado River* Court enumerated several relevant factors for deciding

---

**2.** The arbitrator's preliminary draft award took an even more direct approach to terminating the parties' litigation. It simply stated that "Intel is enjoined and prohibited from prosecuting further [its federal court] cases ... and from asserting any intellectual property rights in the AMD 80386 family of microprocessors." This draft language was omitted in favor of the license contained in final version of the award after AMD advised the arbitrator of two Supreme Court cases establishing that he was without authority to enjoin Intel from prosecuting its federal claims.

**3.** Subsequent to the stay of federal district court proceedings, the Court of Appeal of California reversed the Superior Court's confirmation of the arbitration award as to AMD's license to the 386 microprocessor. *Advanced Micro Devices, Inc. v. Intel Corp.*, 16 Cal.App.4th 346, 20 Cal.Rptr.2d 73 (6th Dist.1993). On September 2, 1993, the California Supreme Court granted AMD's petition for review of the Court of Appeal's judgment. *See* —— Cal.3d ——, 23 Cal.Rptr.2d 100, 858 P.2d 567 (Cal.1993).

whether a stay is appropriate, which later cases have expanded upon. *See, e.g., 40235 Washington Street Corp. v. Lusardi,* 976 F.2d 587, 588 (9th Cir.1992). Although the district court considered a number of these factors, it ignored a significant countervailing consideration that we find dispositive. Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay. As the Supreme Court stated in *Moses H. Cone,*

> When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this,* it would be a serious abuse of discretion to grant the stay or dismissal at all.... Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

460 U.S. at 28, 103 S.Ct. at 943 (emphasis added). The Court reiterated its concern for the prompt and final resolution of all disputed issues in its most recent discussion of the *Colorado River* doctrine, declaring that a district court may enter a *Colorado River* stay order only if it has "full confidence" that the parallel state proceeding will end the litigation. *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988).[4]

■ The concurrent state court proceedings will resolve all the issues in this action *only* if the arbitration award is confirmed and if the state court's resolution of the copyright challenge to the award is deemed to have collateral estoppel effect in federal court.[5] In contrast, if the state court overturns the arbitration award, then the case will return to federal court for the adjudication of the underlying copyright claims (having been delayed for the entire period of the stay).[6] A consideration of these contingencies raises the substantial doubt sufficient to preclude a *Colorado River* stay.[7]

**4.** *See also Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 560, 103 S.Ct. 3201, 3210, 77 L.Ed.2d 837 (1983) (stay improper where state court cannot resolve federal court claims); *Attwood v. Mendocino Coast Dist. Hospital,* 886 F.2d 241, 243 (9th Cir.1989) (by conceding that the *Colorado River* doctrine is applicable, plaintiff agrees that "beyond 'any substantial doubt,' the parallel state court proceedings will provide complete and prompt resolution of the issues in her case"); *Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985) (granting *Colorado River* stay because, among other things, "one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court"); *cf. United States v. Rubenstein,* 971 F.2d 288, 294 (9th Cir.1992) (dicta to the effect that possibility of later federal proceedings does not preclude *Colorado River* stay, when later proceedings merely represent remedial compliance with state court determination of substantive issues). Further, the requirement of "parallel" state court proceedings implies that those proceedings are sufficiently similar to the federal proceedings to provide relief for all of the parties' claims. *See, e.g., Nakash,* 882 F.2d at 1416.

**5.** The preclusive effect of final state court confirmation of the arbitrator's decision was extensively debated by the parties. Since we find the possibility that the award will be reversed through the state appellate review process suffi-

cient to raise a substantial doubt as to whether the state proceedings will end the litigation, we find it unnecessary to resolve this question.

**6.** At oral argument, counsel for AMD confirmed that, if the arbitration award is overturned, AMD has further defenses to Intel's copyright claim that it intends to litigate.

**7.** Since we find that there exists a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case, it is unnecessary for us to weigh the other factors included in the *Colorado River* analysis. *Cf. Lusardi,* 976 F.2d at 589 (declining to weigh other factors when one is sufficient to bar stay). We note, however, that the federal courts are particularly reluctant to relinquish jurisdiction when a case involves federal law issues. As the Supreme Court stated in *Moses H. Cone,* "the presence of federal law issues must always be a major consideration weighing against surrender." 460 U.S. at 26, 103 S.Ct. at 942.

A stay would be especially difficult to justify in a case such as this one, where the copyright claims are subject to exclusive federal jurisdiction. *See* 28 U.S.C. § 1338(a). The Supreme Court has yet to address the question of the applicability of the *Colorado River* doctrine to cases involving claims subject to exclusive federal jurisdiction (the issue was raised, but not

## IV. The Federal Arbitration Act.

██ AMD also contends that the Federal Arbitration Act (FAA) mandates a stay of this case pending completion of state appellate review of the arbitration award.[8] Section 3 of the FAA, 9 U.S.C. § 3, provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement shall on application of one of the parties stay the trial of the action until such arbitration has been had.

The Supreme Court has consistently reaffirmed the duty of the federal courts to support arbitration agreements in applying the FAA. See, e.g., Moses H. Cone, 460 U.S. at 24, 103 S.Ct. at 941; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). The Court recently summarized Moses H. Cone and Mitsubishi as "establish[ing] that, in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration." Volt Info. Sciences v. Leland Stanford Jr. U., 489 U.S. 468, 475–76, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989) (citation omitted).

In the present case, the denial of a stay of federal proceedings in no way undermines the arbitration process. The arbitration clause in the Intel–AMD contract has already

been given effect: the arbitration has been "had" within the meaning of the FAA. Whether it is a state court or a federal court that examines the results of the arbitration, the review remains deferential. Neither court impairs the value of arbitration by reassessing de novo the merits of the contract dispute; instead, the focus of review is narrow, primarily concerned with ensuring that the arbitrator has not exceeded the bounds of his authority. See, e.g., Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir.1989); Southern Cal. Rapid Transit Dist. v. United Transportation Union, 5 Cal. App. 4th 416, 422–23, 6 Cal.Rptr.2d 804 (1992). Here, notwithstanding the fact that the arbitration award is asserted as a defense to copyright claims, the same standard of review applies. We express no view, however, as to the award's collateral or other effect upon those claims in the event that it is determined to be valid.

AMD's claim that federal court proceedings should be stayed is thus not based on deference to arbitration, but instead on a purported deference to state court review of arbitration decisions. The FAA, however, expresses no preference for state court review of arbitration awards. Moreover, there are two significant factors supporting federal court review in this case: copyright claims are within the exclusive jurisdiction of the federal courts, and the federal court action was initiated prior to the state court proceedings.

## V. Full Faith and Credit.

██ AMD contends that the federal full faith and credit statute, 28 U.S.C. § 1738, provides an alternative basis for affirming the district court stay.[9] Section 1738 pro-

---

decided, in Will v. Calvert Insurance Co., 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978)), but the circuit courts, and the Ninth Circuit in particular, have uniformly held that a district court may not grant a stay in this context. See, e.g., Minucci v. Agrama, 868 F.2d 1113, 1115 (9th Cir.1989); Silberkleit v. Kantrowitz, 713 F.2d 433, 435 (9th Cir.1983); Medema v. Medema Builder, 854 F.2d 210, 214 (7th Cir.1988). The issue is made more complicated here, however, by the fact that the state court proceedings do not involve an ordinary civil action, but rather the confirmation of an arbitration award.

8. Under California law, a confirmed arbitration award becomes enforceable only after all appeals are exhausted. Thriftimart, Inc. v. Superior Court, 202 Cal.App.2d 421, 424–25, 21 Cal.Rptr. 19 (1962).

9. Although AMD did not raise this issue below, the district court's order may be affirmed by this court on any ground supported by the record. See Jackson v. Southern California Gas Co., 881 F.2d 638, 643 (9th Cir.1989).

vides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." The purpose of this statute is to promote comity and federalism by allowing the states to determine the preclusive effect of their courts' judgments. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985). Accordingly, the statute requires that federal courts look to state law to determine the preclusive effect of an earlier state judgment. *Id.*

AMD relies on a 1933 California appellate case, *Robinson v. El Centro Grain Co.,* 133 Cal.App. 567, 24 P.2d 554 (1933), in asserting that California preclusion rules require a stay of the present proceedings. *Robinson* provides no support for this assertion, however; in fact, the *Robinson* court explicitly acknowledges that the judgment of a state trial court from which an appeal is pending has no res judicata effect on the issues in another case. *Id.* at 573, 24 P.2d 554. As the Supreme Court has indicated, the res judicata effect, or, more narrowly, the claim preclusion effect, of a prior judgment is precisely what preclusion rules determine. *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332 (using terms "preclusive effect" and "rules of res judicata" interchangeably). Instead of res judicata, *Robinson*'s holding that the trial court must stay proceedings if a parallel California judgment is on appeal is expressed as a matter of procedure, based on the desire to avoid inconsistent judgments by the state Supreme Court. *Robinson,* 133 Cal.App. at 573–74, 24 P.2d 554.

*VI. Conclusion.*

While the district court might perhaps understandably be daunted by the prospect of evaluating the results of nearly five years of arbitration, the presence of state law issues—especially issues relating to breach of contract—is not generally a valid justification for granting a stay under the

*Colorado River* doctrine. *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942; *Madonna,* 914 F.2d at 1370. Moreover, the critical questions regarding enforceability appear to be primarily legal; they concern the jurisdiction of the arbitrator and the appropriateness of the remedy. At any rate, the existence of state law issues does not outweigh the court's obligation to ensure the "complete and prompt" resolution of all of the parties' claims, state and federal. By ignoring this obligation, the district court abused its discretion in granting a stay of proceedings under the "wise judicial administration" doctrine of *Colorado River.* Nor do the FAA or the full faith and credit statute justify a stay of proceedings. Accordingly, the district court's stay order is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.