**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

R.R. STREET & CO. INC.; NATIONAL
UNION FIRE INSURANCE COMPANY OF
PITTSBURGH, PA, individually and
as subrogee of R.R. Street & Co.
Inc.,
        *Plaintiffs-Appellants,*

    v.

TRANSPORT INSURANCE COMPANY,
        *Defendant-Appellee.*

No. 10-55361

D.C. No.
2:09-cv-06045-CAS-
FMO

TRANSPORT INSURANCE COMPANY, a
corporation,
        *Plaintiff-Appellee,*

    v.

R.R. STREET & CO. INC., a
corporation; NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, a corporation,
        *Defendants-Appellants.*

No. 10-55404

D.C. No.
2:09-cv-08368-CAS-
FMO

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
June 7, 2011—Pasadena, California

Filed September 2, 2011

16763

Before: Robert R. Beezer, Stephen S. Trott, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Beezer

**COUNSEL**

Eric Grant, Hicks Thomas LLP, Sacramento, California, for plaintiff-defendant-appellant R.R. Street & Co. Inc.; Bryan G. Schumann, Lewis Brisbois Bisgaard & Smith LLP, Chicago, Illinois, for plaintiff-defendant-appellant National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

Michael W. Wong (briefed) and Ray L. Wong (argued), Duane Morris LLP, San Francisco, California, for the defendant-plaintiff-appellee.

## OPINION

BEEZER, Circuit Judge:

This dispute emerges from a web of state and federal litigation over liability for damages and defense costs in certain environmental tort suits. The appeal before us concerns two cases that mirror each other: (1) an action for damages that the Appellants brought in federal court and (2) a declaratory judgment action that the Appellee brought in state court, which Appellants later removed to federal court. The district court declined to entertain these actions, by dismissing the former and remanding the latter, in light of a related third action that had been pending for several years in state court. We must examine the propriety of this decision.

Considering the particular circumstances of this case, we conclude that the district court had discretion under *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995), and *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), to remand the declaratory judgment action, and that the action for damages fell within the scope of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). We therefore affirm.

## I

## BACKGROUND

Vulcan Materials Company ("Vulcan") manufactures a dry-cleaning solvent called perchloroethylene ("PerSec").[1] Between the 1960s and the 1990s, R.R. Street & Co. Inc. ("Street") distributed PerSec. During this time, Vulcan named Street as an additional insured under its insurance policies, including an excess liability coverage policy that Transport Insurance Company ("Transport") issued to Vulcan in 1981

---

[1]Vulcan is not a party to either of the cases on appeal.

(the "1981 Policy"). Since the 1990s, a number of lawsuits have been filed against Vulcan and Street alleging damage caused by the sale, distribution, use or handling of PerSec (collectively the "Tort Actions"). Street and Vulcan separately defended these actions. Since 2005, the companies and their insurers have engaged in an ongoing dispute over liability for damages and defense costs in the Tort Actions.

## A.    The Vulcan Action

In January 2005, Transport filed a lawsuit in the Los Angeles County Superior Court seeking a declaration of its coverage obligations to Vulcan under four consecutive insurance policies, including the 1981 Policy. In August 2006, two other insurance carriers filed similar actions against Vulcan and its primary insurers in the same court. In January 2007, these cases were consolidated into a single complex proceeding (the "Vulcan Action") in Los Angeles County Superior Court.

In the meantime, Street sought reimbursement from Vulcan for defense costs and damages in the Tort Actions. In February 2008, Street and its insurer, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), filed a breach of contract and indemnity action against Vulcan in the Northern District of Illinois to recover these amounts (the "Illinois Action"). *See R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711 (7th Cir. 2009). (We refer to Street and National Union collectively as "Street/National Union.") In the Illinois Action, Street/National Union claimed that Vulcan was liable to Street based on an indemnification provision in the parties' distribution contract. *Id.* at 713.

In April 2008, Vulcan filed the state court equivalent of a third-party complaint against Street/National Union in the Vulcan Action; Vulcan hoped to resolve all indemnification claims related to the Tort Actions in a single proceeding. Vulcan's complaint against Street/National Union mirrored the Illinois Action; in addition, Vulcan sought a declaration that

its insurers were liable for any obligation Vulcan owed to Street/National Union.

With the same claims pending in an Illinois federal court and a California state court, Vulcan and Street/National Union waged a battle to determine which court would hear the claims between them.[2] The state court agreed to stay the claims against Street/National Union in the Vulcan Action and decide them at a later stage of the litigation.

At no point did Transport intervene in the Illinois Action, and prior to the cases on appeal, no claims had been filed between Street and Transport in the Vulcan Action or elsewhere.[3] Nevertheless, the parties and the court were aware of the dormant claims between Street and Transport. In a January 2009 supplemental brief on preliminary issues in the Vulcan Action, National Union argued that the superior court's initial determinations would not apply to any of Street's potential claims under the 1981 Policy because Street was in a different position than Vulcan.

At a March 2009 status hearing, the parties discussed Street's status as an additional insured under the 1981 Policy. Street indicated that it had made a demand for coverage under

---

[2]Vulcan filed a motion to dismiss the Illinois Action based on its new claims in the Vulcan Action. *See R.R. Street & Co.*, 569 F.3d at 714. As in this case, the district court refused to exercise jurisdiction over the Illinois Action based on the Vulcan Action; however, in that case the court relied solely on its discretion under the Declaratory Judgment Act. *Id.* at 714. The Seventh Circuit held that the district court abused its discretion by applying *Wilton/Brillhart* to claims for damages, but the court refrained from deciding whether *Colorado River* would have justified dismissal of the action for damages. *Id.* at 717 & n.10.

[3]Since 2006, National Union has been a defendant in the Vulcan Action in its capacity as Vulcan's insurer, but National Union has consistently distinguished between its capacity as Vulcan's insurer and its capacity as Street's insurer. We do not consider National Union's involvement as Vulcan's insurer in our analysis of this case.

the 1981 Policy, which Transport had rejected, but it had not yet filed any claims against Transport in court because the underlying Tort Actions were still pending. Street argued that any coverage decisions regarding Vulcan should not apply to Street because Street was covered by different primary insurance policies, was in a different position than Vulcan in relation to the Tort Actions and had not participated in discovery or case management related to Transport's claims against Vulcan. The state court postponed this issue, stating that it would decide later whether Street would be bound by a decision regarding Vulcan's coverage under the 1981 Policy.

In April 2009, the state court issued an order in the Vulcan Action deciding three preliminary legal issues concerning the scope of Transport's liability to Vulcan under the 1981 Policy. The court determined the scope of Transport's duty to defend under the policy, interpreted the phrase "underlying insurance," and addressed whether horizontal exhaustion applied to Vulcan's claims under the policy. The court's interpretation of the 1981 Policy favored Transport's position, so Vulcan appealed the decision to the California Court of Appeals.

## B.    The Federal and Removed Actions

On August 18, 2009, while Vulcan's appeal was pending, Street/National Union filed an action for damages against Transport (the "Federal Action") in the Central District of California. In the Federal Action, Street/National Union asserted claims for breach of contract, subrogation, equitable contribution and unjust enrichment under the 1981 Policy, seeking damages and defense costs incurred in the Tort Actions.

A few days later, on August 20, 2009, Street/National Union and Vulcan agreed to dismiss the claims between them in the Vulcan Action. As of that date, Street was no longer a party to the Vulcan Action. Upon learning that Street/National

Union had filed the Federal Action and had been voluntarily dismissed from the Vulcan Action, the state court judge urged Transport to either amend its complaint to name Street/National Union as defendants in the Vulcan Action or file a separate action against Street/National Union that could be consolidated with the Vulcan Action.

On November 10, 2009, Transport filed a declaratory judgment action against Street and National Union in Los Angeles County Superior Court (the "Removed Action"). Transport's action mirrors the Federal Action. Transport also filed in the state court a notice stating that its declaratory judgment action is related to the Vulcan Action.

On November 12, 2009, Transport filed in the district court a motion to stay or dismiss the Federal Action in light of the Vulcan Action and the Removed Action, which were then separately pending in state court. On November 16, 2009, before the district court ruled on Transport's motion and before the state court consolidated the Removed Action with the Vulcan Action, Street removed Transport's action to federal court. A few weeks later, the state court entered an order relating the cases in the event that the Removed Action was remanded to state court.

The Federal Action and the Removed Action were assigned to the same judge, and Transport quickly moved for remand of the Removed Action as well as dismissal of the Federal Action. On February 8, 2010, the district court granted both of Transport's motions. Noting the similarities between the two actions in federal court and the Vulcan Action, the district court exercised its discretion under the Declaratory Judgment Act to remand the Removed Action, and the court dismissed the Federal Action pursuant to the principles announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Based on the *Rooker-Feldman* doctrine, the court also concluded that it lacked jurisdiction to decide

any issues addressed in the state court's April 2009 order in the Vulcan Action.

Street and National Union timely appealed the remand and the dismissal, and this court consolidated the appeals. Both the remand and the dismissal are appealable decisions. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712-13, 715 (1996). The district court had jurisdiction under 28 U.S.C. § 1332(a)(1), based on diversity of citizenship, and we have jurisdiction to consider the appeals under 28 U.S.C. § 1291.

## II

## TRANSPORT'S MOTION TO DISMISS

Before examining the district court's decision, we must address a preliminary question — whether to dismiss Street/National Union's appeal of the remand order. Transport argues that Street/National Union waived their right to "re-remove" the Removed Action to federal court when they filed a cross-complaint in the Vulcan Action. In some cases, a defendant may waive the *initial* right to removal if "the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there." *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994). Transport cites no authority extending this waiver principle to the *appeal* of a remand order, but even if we extended it to this case, Transport's argument would fail. "A waiver of the right of removal must be clear and unequivocal." *Id.* (internal quotation marks omitted). Here, there is no evidence that Street/National Union intended to waive their right to appeal the district court's order. Street/National Union merely sought to preserve their claims in state court pending the outcome of this appeal; they have indicated at every step of the way that they intended to pursue the appeal.

Further, Street's post-remand filings do not deprive us of jurisdiction to review the remand order. The case is not moot

because an "actual controversy" still exists between Transport and Street/National Union. *See Alvarez v. Smith*, ___ U.S. ___, 130 S. Ct. 576, 580-81 (2009). For these reasons, we deny Transport's motion to partially dismiss the appeal, and we review the district court's decision in its entirety.

## III

## STANDARD OF REVIEW

We review application of the *Rooker-Feldman* doctrine de novo. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). We review the district court's decision to refrain from deciding a declaratory judgment action for abuse of discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995). We also review a district court's decision to stay or dismiss an action based on *Colorado River* for abuse of discretion; however, this standard is stricter "than the flexible abuse of discretion standard used in other areas of law" because "discretion must be exercised within the narrow and specific limits prescribed by the [*Colorado River*] doctrine." *Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002) (internal quotation marks omitted). Thus, "[w]hether the facts of a particular case conform to the requirements for a *Colorado River* stay or dismissal is a question of law which we review de novo." *Smith v. Cent. Ariz. Water Conservation Dist.*, 418 F.3d 1028, 1032 (9th Cir. 2005).

Although the parties have filed a number of motions asking us to consider recent developments in the state court proceedings, we examine the district court's decision based on the state of affairs at the time of that decision. We judge "the propriety of the district court's assumption of jurisdiction" in a declaratory judgment action "as of the time of filing, not the time of appeal." *Emp'rs Reinsurance Corp. v. Karussos*, 65 F.3d 796, 800 (9th Cir. 1995), *overruled in part on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) (en banc). Although we have not explicitly

addressed the scope of review for a grant of a *Colorado River* motion, when reviewing the district court's denial of a *Colorado River* motion to stay or dismiss, we previously have held that we consider only "the then-available facts." *Smith*, 418 F.3d at 1033 n.5. We see no reason to adopt a different rule in this case. As we noted in *Smith*, " '[d]ocuments or facts not presented to the district court are not part of the record on appeal.' " *Id.* (quoting *United States v. Elias*, 921 F.2d 870, 874 (9th Cir. 1990)). We therefore deny the parties' motions requesting judicial notice, motions to supplement the record and motions to file supplemental briefs because these motions relate to events that occurred *after* the district court remanded the Removed Action and dismissed the Federal Action. We proceed by reviewing the district court's decision in light of the circumstances at the time of that decision.

## IV

### *ROOKER-FELDMAN*

**[1]** The district court concluded that *Rooker-Feldman* prohibited the court from considering any of Street/National Union's allegations that were contrary to findings in the superior court's April 2009 order.[4] We disagree. The Supreme Court has confined *Rooker-Feldman* to the narrow range of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

**[2]** Here, there is simply "no state court *judgment* from which" Street/National Union seek relief. *Vacation Vill., Inc. v. Clark Cnty.*, 497 F.3d 902, 911 (9th Cir. 2007) (emphasis added). Even if we considered the April 2009 order a *judg-*

---

[4]The April 2009 order decided stipulated legal questions without entering a judgment.

*ment*, the order did not apply to Street/National Union. *Rooker-Feldman* therefore does not deprive the district court of jurisdiction over the claims in the Federal Action or the Removed Action. *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (noting that *Rooker-Feldman* does not apply to claims that have not yet been litigated); *Carmona*, 603 F.3d at 1052 (concluding that *Rooker-Feldman* did not apply to a claim against a new party "even though [the claim] raise[d] the same legal issue" as claims against prior parties).

# V

## DISCRETION OVER ENTERTAINING THE ACTIONS

**[3]** Having determined that the district court had jurisdiction to consider the claims in the Federal Action and the Removed Action, we must now decide whether the district court had discretion to refrain from exercising that jurisdiction. Although courts usually avoid duplicative litigation when similar cases are pending in two different *federal* courts, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the *state* court is no bar to proceedings concerning the same matter" in a federal court. *Colorado River*, 424 U.S. at 817 (emphasis added) (internal quotation marks omitted). In this case, the district court relied on two doctrines that provide exceptions to the general rule concerning concurrent state and federal proceedings. The court remanded the Removed Action based on the *Wilton/Brillhart* doctrine, and it dismissed the Federal Action pursuant to *Colorado River*. We consider these doctrines in turn.

### A.    *Wilton/Brillhart*

**[4]** The Declaratory Judgment Act uses permissive language. *See* 28 U.S.C. § 2201(a) (stating that federal courts "*may* declare the rights and other legal relations of any inter-

ested party" in a declaratory judgment action (emphasis added)). Based on the permissive nature of the Declaratory Judgment Act, in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), the Supreme Court held that a district court has discretion to dismiss a federal declaratory judgment action when "the questions in controversy . . . can better be settled in" a pending state court proceeding. *Id.* at 495. The Court reaffirmed this principle in *Wilton*, holding that a district court may decline to entertain a federal declaratory judgment action when state court proceedings "present[ ] opportunity for ventilation of the same state law issues." 515 U.S. at 290. The Court has not yet delineated "the outer boundaries" of the so-called *Wilton/Brillhart* doctrine, *id.*, but we have allowed district courts broad discretion as long as it furthers the Declaratory Judgment Act's purpose of enhancing "judicial economy and cooperative federalism," *Dizol*, 133 F.3d at 1224.

**[5]** In *Brillhart*, the Court articulated three factors that courts should consider when examining the propriety of entertaining a declaratory judgment action: avoiding "needless determination of state law issues"; discouraging "forum shopping"; and avoiding "duplicative litigation." *See Dizol*, 133 F.3d at 1225. Although courts may also consider a number of other factors, the three "*Brillhart* factors remain the philosophic touchstone" for the *Wilton/Brillhart* analysis, *id.*, and they served as the basis for the district court's decision in this case. The district court found that the claims in the Removed Action involved state law issues that had been or could be considered in the Vulcan Action; that Street had engaged in forum shopping by filing the Federal Action and removing the Removed Action; and, most significantly, that the Removed Action was duplicative of the Vulcan Action.

## 1. Determination of State Law Issues

**[6]** There is no question that retaining jurisdiction over the Removed Action would have required the district court to

decide basic issues of state law. In prior cases, we have recognized that needless determination of state law issues alone may support remand. *See Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802-04 (9th Cir. 2002) (affirming remand of a declaratory judgment action to avoid needless determination of state law issues even in the absence of a similar state court proceeding). We do not end our analysis here, however, because the presence of the Federal Action raises other considerations in this case.

## 2.   Forum Shopping

Street/National Union argue that the district court abused its discretion by remanding the Removed Action instead of staying or consolidating it with the Federal Action because Transport's Removed Action was "reactive." We have instructed that "federal courts should generally decline to entertain reactive declaratory actions." *Dizol*, 133 F.3d at 1225. For example, we held that when an insurer filed a declaratory judgment action in federal court "during the pendency of a non-removable state court action presenting the same issues of state law," and the insurer did so merely to obtain "a tactical advantage from litigating in a federal forum," the "defensive or reactive" nature of the insurer's action warranted dismissal. *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371-72 (9th Cir. 1991), *overruled in part on other grounds by Dizol*, 133 F.3d at 1220.

[7] The declaratory judgment action in *Robsac* was "an archetype" of " 'reactive' litigation," *id.* at 1372, but this case is distinguishable from *Robsac*. In *Robsac*, it was clear that the insurance company was forum-shopping merely for strategic purposes, and all of the *Brillhart* factors pointed in the same direction. *See id.* at 1371-73. Here, Transport concedes that it filed the Removed Action in response to the Federal Action, but it did so not merely to seek a favorable forum but also to seek a forum that could resolve all issues related to the 1981 Policy in one comprehensive proceeding. Additionally,

in contrast to *Robsac*, both parties appear to have engaged in some defensive maneuvering or "procedural fencing."**[5]**

The mere fact that the district court's decision preserved the later-filed Removed Action instead of the earlier-filed Federal Action is of no consequence. Although courts generally give preference to the first-filed case among concurrent federal court proceedings, this "is not a rigid or inflexible rule to be mechanically applied," but rather one that yields "to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). Timing is only one consideration when deciding whether to entertain a declaratory judgment action, and the *Wilton/Brillhart* factors sometimes compel a court to decline to entertain an earlier-filed action in favor of a later-filed action. *See Wilton*, 515 U.S. at 280-82 (affirming dismissal of a federal action in light of a later-filed state action); *Huth*, 298 F.3d at 802-04 (affirming dismissal of an earlier-filed declaratory action but remanding a later-filed one).

### 3.   Duplicative Litigation

If the Removed Action had been the only case pending before the district court, there would be no question that the court properly remanded the case. Retaining jurisdiction over the Removed Action would have required the district court to address the same issues of state law and policy interpretation that the state court had been grappling with for several years in the Vulcan Action, leading to duplicative litigation. In this case, however, the district court had to consider not only the Removed Action, which requests only declaratory relief, but also the Federal Action, which includes claims for damages.

We have held that if the same action contains claims for both monetary and declaratory relief, "the district court

---

**[5]**We provide a more lengthy discussion of "forum shopping" in our *Colorado River* analysis below.

should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (internal quotation marks omitted). *Snodgrass* raises two considerations significant to this case. First, the discretionary *Wilton/Brillhart* standard does not apply to actions for damages, and the court may not rely solely on this standard to dispose of claims for damages. In *Snodgrass*, the district court on its own motion used its broad discretion under the Declaratory Judgment Act to remand the entire case even though "the essence of" the case was "a suit for damages." *Id.* We reversed because "[c]laims that exist independent of the request for a declaration are not subject to the Declaratory Judgment Act's discretionary jurisdictional rule" but instead "invoke the 'virtually unflagging' obligation of the district court to hear jurisdictionally sufficient claims." *Id.* (quoting *Colorado River*, 424 U.S. at 817).[6]

Second, if the district court must exercise jurisdiction over claims for damages, the court should also retain similar claims for declaratory relief to avoid piecemeal litigation. Given the usual obligation to exercise jurisdiction over claims for damages, "[r]emanding only the declaratory component of . . . an action will frequently produce piecemeal litigation, a result which the Declaratory Judgment Act was intended to avoid, rather than promote." *Id.* (citations omitted); *see also Dizol*, 133 F.3d at 1225-26 ("If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation.").

[8] Although this case involves two separate actions, while *Snodgrass* involved a single action with claims for both monetary and declaratory relief, the same basic principles apply. If the district court must exercise jurisdiction over the Federal

---

[6]In *Snodgrass*, the question whether *Colorado River* authorized a stay or dismissal of the claims for damages was not before the court.

Action, then the court should also retain jurisdiction over the Removed Action. The two actions involve identical issues, so remanding the Removed Action while maintaining the Federal Action would not serve the *Wilton/Brillhart* goals of avoiding duplicative litigation and needless determination of state law issues. *Cf. id.*; *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367-68 (9th Cir. 1991) (noting that refusing to issue a declaratory judgment may result in piecemeal litigation if the court retains jurisdiction over other claims).[7] In short, we conclude the district court did not abuse its discretion by remanding the Removed Action as long as *Colorado River* authorized dismissal of the Federal Action. We now turn to *Colorado River*.

## B.    *Colorado River*

As we noted above, courts do not possess the same discretion over actions for damages that they possess over declaratory judgment actions. *See Wilton*, 515 U.S. at 286. Indeed, when it comes to non-discretionary actions for damages, such as the Federal Action, federal courts possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Only in rare cases will "the presence of a concurrent state proceeding" permit the district court to dismiss a concurrent federal suit "for reasons of wise judicial administration." *Id.* at 818.

The Supreme Court recognized such a rare case in *Colorado River*. There, the federal government brought suit against water users in federal court, seeking a declaration of water rights in certain rivers and tributaries in Colorado. *Id.*

---

[7]Street/National Union rely heavily on *Chamberlain*, but this case is distinguishable. Street/National Union assert that the district court abused its discretion by *remanding* the declaratory judgment action, but in *Chamberlain*, we addressed whether the district court abused its discretion by *entertaining* the action. 931 F.2d at 1366. Further, the district court in *Chamberlain* did not invoke *Colorado River*, and we did not address it in that case. *See id.* at 1366-68.

at 805. Colorado had previously established seven water districts to adjudicate water rights in ongoing state court proceedings. *Id.* at 804. After the government filed its suit in federal court, several of the defendants in that case filed an application joining the government as a party in the state court proceedings for the relevant water district. *Id.* at 806. The district court then dismissed the government's federal suit in light of the ongoing state court proceedings. On appeal, the Supreme Court held that although none of the traditional abstention doctrines applied, "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," justified dismissal of the federal suit. *Id.* at 817 (alternation in original) (internal quotation marks omitted). The Court noted several factors that supported dismissal, relying particularly on the "highly interdependent" relationship between the claims in the state and federal proceedings and the federal policy, embodied in the McCarran Amendment, of avoiding piecemeal adjudication of water rights. *Id.* at 819-20.

**[9]** The Court has carefully limited *Colorado River*, emphasizing that courts may refrain from deciding an action for damages only in "exceptional" cases, and only "the clearest of justifications" support dismissal. *Id.* at 818-19. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the Court held that no exceptional circumstances justified the district court's stay of an action to compel arbitration under the Federal Arbitration Act. 460 U.S. 1, 19 (1983). The Court noted that although a state court suit involving the underlying claims was pending when the federal suit was filed, the federal suit did not increase the risk of piecemeal litigation; substantial progress had already been made in the federal suit; federal law provided the rule of decision on the merits of the case; and there was substantial doubt as to whether the state court could issue the remedy sought in federal court. *Id.* at 19-26.

**[10]** To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Colorado River*, 424 U.S. at 818. Drawing from *Colorado River*, *Moses H. Cone* and subsequent Ninth Circuit cases, we have recognized eight factors for assessing the appropriateness of a *Colorado River* stay or dismissal:[8] (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *Holder*, 305 F.3d at 870.[9]

The first two factors in *Holder* are irrelevant in this case because the dispute does not involve a specific piece of property, and both the federal and state forums are located in Los Angeles. We discuss each of the remaining six factors below, mindful that "[a]ny doubt as to whether a factor exists should

---

[8]We generally require a stay rather than a dismissal. *See Coopers & Lybrand v. Sun-Diamond Growers of CA*, 912 F.2d 1135, 1136 (9th Cir. 1990). But we do not consider this issue because Street/National Union did not raise it on appeal. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009) ("We will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." (internal quotation marks omitted)).

[9]The Court enumerated the first four factors in *Colorado River*. 424 U.S. at 818-19. The fifth and sixth factors are drawn from *Moses H. Cone*, 460 U.S. at 23-27, and the seventh and eighth factors emerged from subsequent Ninth Circuit cases, *see Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367-68 (9th Cir. 1990). In *Holder*, we explicitly listed the first seven factors, but we also considered the eighth factor as a preliminary matter. *See Holder*, 305 F.3d at 870.

be resolved against a stay" or dismissal. *Travelers*, 914 F.2d at 1369. As indicated below, some factors may weigh for or against the exercise of jurisdiction while others primarily serve as a bar to stay or dismissal.

### 1.    Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988). The mere possibility of piecemeal litigation does not constitute an exceptional circumstance. *See Travelers*, 914 F.2d at 1369. Instead, the case must raise a "special concern about piecemeal litigation," *id.*, which can be remedied by staying or dismissing the federal proceeding. *See Moses H. Cone*, 460 U.S. at 20-21 (noting that a stay of the federal suit would not alleviate the possibility that some claims would be subject to arbitration while others were decided in court).

With the Removed Action in state court, there is no question that maintaining the Federal Action would result in piecemeal litigation. But it would be improper for a court to stay or dismiss a case based on a possibility of piecemeal adjudication that the court could have avoided by other means. Because the district court could have retained jurisdiction over the Removed Action, the proper inquiry in this case is whether maintaining jurisdiction over the Federal Action would result in piecemeal litigation *even if* the Removed Action were not in state court. Like the district court, we conclude that it would.

**[11]** Even if the district court had stayed the Removed Action, deciding the Federal Action and the Vulcan Action in separate courts would result in duplication of efforts. Both the Vulcan Action and the Federal Action are centered on whether the 1981 Policy obligates Transport to cover damages and defense costs in the Tort Actions. In *Colorado River*, the

Court noted that the McCarran Amendment evidenced a clear policy of avoiding "piecemeal adjudication of water rights in a river system." 424 U.S. at 819. Here, there is no explicit policy of avoiding piecemeal adjudication, but like the government in *Colorado River*, Street asks the district court to adjudicate rights that are implicated in a " 'vastly more comprehensive' state action." *Travelers*, 914 F.2d at 1369. The state court consolidated multiple cases to create a comprehensive scheme for deciding coverage in the Tort Actions. There was a "highly interdependent" relationship between the claims in the Federal Action and the claims in the Vulcan Action, *Colorado River*, 424 U.S. at 819, and although Street/National Union had not yet brought their claims, the state court contemplated these claims in its plans for proceeding in the Vulcan Action. The district court did not err by concluding that avoidance of piecemeal litigation weighs significantly against jurisdiction, particularly in light of the next factor. *See Am. Int'l Underwriters*, 843 F.2d at 1258 (upholding a *Colorado River* dismissal, in part to avoid piecemeal litigation).

## 2.    Order of Jurisdiction

We next consider the order in which the forums obtained jurisdiction. As a technical matter, Street is correct that the district court was the first to exercise jurisdiction over the specific claims in the Federal Action. Prior to the Federal Action, Vulcan had filed claims against Street/National Union in the Vulcan Action, but no claims had been asserted between Transport and Street/National Union.

Our analysis does not end here, however. The Supreme Court has instructed that instead of taking a mechanical approach, courts must apply this factor "in a pragmatic, flexible manner with a view to the realities of the case at hand." *Moses H. Cone*, 460 U.S. at 21 (giving little weight to the dates of filing when the same relative progress had been made in the state and federal proceedings). Here, the state court was

the first to exercise jurisdiction over the subject matter involved in the Federal Action. Although this might not be relevant in every case, the progress of the Vulcan Action and Street/National Union's involvement in the Vulcan Action make this an important consideration in this case.

**[12]** Between the filing of the Vulcan Action in 2005 and the filing of the Federal Action in 2009, the state court made significant progress in the Vulcan Action. The court already interpreted the relevant provisions of the 1981 Policy and was positioned to fully adjudicate the broader coverage dispute between Vulcan and Transport. The court had conducted discovery, initiated a phased approach to the litigation and issued an order concerning foundational legal matters. In fact, much of this progress occurred after Vulcan brought Street/National Union into the action in 2008. *Cf. Colorado River*, 424 U.S. at 820 (noting "the existing participation by the Government" in similar state court proceedings). Additionally, both the parties and the court acknowledged Street/National Union's unlitigated claims against Transport, and the state court expressly reserved any decisions regarding these claims for a later phase of the litigation. Considering the realities of this case, the district court properly concluded that the state court's progress in the Vulcan Action weighs against jurisdiction.

### 3.   Source of Law

**[13]** As with most insurance coverage disputes, state law provides the rules of decision for all of Street/National Union's claims, but we consider this a neutral factor here. "[A]lthough 'the presence of federal-law issues must always be a major consideration weighing against surrender' [of jurisdiction], the 'presence of state-law issues may weigh in favor of that surrender only 'in some rare circumstances.' " *Travelers*, 914 F.2d at 1370 (quoting *Moses H. Cone*, 460 U.S. at 26). This case does not present such "rare circumstances." The complexity of the Vulcan Action and related matters stems from the number of policies and insurers, not

from the type of law involved in the action. Because the cases here involve "routine issues of state law," such as breach of contract, indemnification and subrogation, this factor does not weigh against jurisdiction. *See id.* (concluding the same where the cases involved state law claims for misrepresentation, breach of fiduciary duty and breach of contract).

### 4.   Adequacy of State Court

A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants. For example, if there is a possibility that the parties will not be able to raise their claims in the state proceeding, a stay or dismissal is inappropriate. *See Moses H. Cone*, 460 U.S. at 26 (emphasizing that the state court might lack the power to enter the order that the plaintiff was seeking in federal court); *Holder*, 305 F.3d at 869 n.5 (noting that the state court probably lacked jurisdiction to hear the plaintiff's federal ICARA claim).

**[14]** Here, there is no question that the state court has authority to address the rights and remedies at issue in this case. In fact, Street/National Union concede that the state court can adequately resolve the parties' claims. Like source of law, however, this factor "is more important when it weighs in favor of federal jurisdiction." *Travelers*, 914 F.2d at 1370 (internal quotation marks omitted).

### 5.   Forum Shopping

Forum shopping refers to "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." Black's Law Dictionary 726 (9th ed. 2009). To avoid forum shopping, courts may consider "the vexatious or reactive nature of either the federal or the state litigation." *Moses H. Cone*, 460 U.S. at 17 n.20. We have affirmed a *Colorado River* stay or dismissal when it was readily apparent that the federal plaintiff was engaged in forum shopping. *See*

*Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989) (plaintiff brought claims in federal court after three and a half years of litigating in state court); *Am. Int'l Underwriters*, 843 F.2d at 1255-56 (after filing in state court, plaintiff brought suit in federal court to avoid the state court's unfavorable evidentiary rules).

The district court did not expressly rely on this factor in its brief *Colorado River* analysis, and given the circumstances of this case, we do not believe this factor weighs significantly for or against jurisdiction. Each party contends that the other engaged in forum shopping. Transport argues that Street engaged in forum shopping by filing the Federal Action instead of filing its claims in the Vulcan Action. Indeed, Street/National Union had been third parties in the Vulcan Action since April 2008, but they filed the Federal Action only after the superior court's April 2009 order, which favored Transport, and only after convincing Vulcan to dismiss Street/National Union from the Vulcan Action. On the other hand, as of at least March 2009, Transport knew that Street was a defendant in the Tort Actions and was listed as an additional insured on the 1981 Policy, yet Transport never filed any claims for declaratory relief against Street until *after* Street filed the Federal Action.

We decline the parties' invitation to referee their finger-pointing match. The chronology of events suggests that both parties took a somewhat opportunistic approach to this litigation, but we cannot classify either party's actions as mere forum shopping. As we noted in our *Brillhart* discussion above, Transport sought a *comprehensive* forum, not merely a favorable one. In this sense, Transport's attempt to consolidate Street/National Union's claims with the Vulcan Action is no different than the application by the defendants in *Colorado River* to join the government as a party to state water district proceedings. *See Colorado River*, 424 U.S. at 820 n.25.

**[15]** Neither can we say that Street/National Union were merely forum shopping by filing the Federal Action. Prior to filing the Federal Action, Street/National Union had not previously asserted their claims against Transport, and we are cautious about labeling as "forum shopping" a plaintiff's desire to bring previously unasserted claims in federal court. "[T]he desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III." *First State Ins. Co. v. Callan Assocs., Inc.*, 113 F.3d 161, 162 (9th Cir. 1997). In this particular case, we cannot say that forum shopping weighs significantly for or against jurisdiction.

### 6.    Parallel Suits

The final factor, and one that features prominently in this appeal, is whether the state court proceeding sufficiently parallels the federal proceeding. Although we have not always required "exact parallelism," the two actions must be "substantially similar." *Nakash*, 882 F.2d at 1416. We have held that " 'the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes' " a *Colorado River* stay or dismissal. *Smith*, 418 F.3d at 1033 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993)).

As Street/National Union note, prior to the cases on appeal, there was doubt about whether the Vulcan Action would resolve Street/National Union's claims against Transport. No claims had been filed between Transport and Street/National Union, and the state court had expressly reserved the question of whether collateral estoppel would apply to these claims once the court entered a judgment concerning Vulcan's claims. *See Intel Corp.* 12 F.3d at 913 (concluding that there was no parallel proceeding where the state court proceeding would resolve all issues *only if* the state courts confirmed the arbitration award and collateral estoppel applied to all other claims based on that award).

Nevertheless, even Street/National Union concede that the Removed Action will resolve all issues raised in the Federal Action. The question for us is whether the district court abused its discretion by considering the Removed Action in its *Colorado River* analysis. According to Street/National Union, the district court erred by considering the Removed Action because the action was not in state court at the time of the district court's decision. We disagree.

Courts generally rely on the state of affairs at the time of the Colorado River analysis. *See Moses H. Cone*, 460 U.S. at 21-22 (considering the existence of a state court action that was filed after the federal court proceeding). We think this state of affairs includes the court's discretion to remand the Removed Action. To say that the district court could not consider the Removed Action because it was not pending in state court at the specific moment the court dismissed the Federal Action would be contrary to the Court's instruction that the *Colorado River* factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 20. It would also ignore the underlying purpose of the *Colorado River* doctrine.

**[16]** The *Colorado River* doctrine promotes "wise judicial administration." *Colorado River*, 424 U.S. at 817. We require a parallel suit to ensure "comprehensive disposition of litigation." *See id*. Otherwise, a stay or dismissal will neither conserve judicial resources nor prevent duplicative litigation. For example, in *Holder*, we reversed a *Colorado River* stay because the plaintiff likely could not have brought his federal claim in the state court proceeding. 305 F.3d at 868-70. Similarly, in *Intel Corp.*, we concluded that a stay is inappropriate when there is a good chance that the federal court would have to decide the case eventually because the state proceeding will not resolve all of the issues in the federal case. 12 F.3d at 913. Here, there is no question that with the Removed Action in state court, the state proceedings will resolve all issues, and

the goal of "comprehensive disposition of litigation" will be met.

Street/National Union compare this case to *Kirkbride v. Continental Casualty Co.*, 933 F.2d 729 (9th Cir. 1991), but the facts distinguish this case from *Kirkbride*. In *Kirkbride*, we held that *Colorado River* did not support the district court's remand of a case because "there was no concurrent or pending state court proceeding when the appellees moved for remand" since "the entire case" had been removed to federal court. *Id.* at 734. In *Kirkbride*, there was only one action, and the court relied on *Colorado River* to remand that action. *Id.* There was no equivalent of the Vulcan Action and therefore no concern about piecemeal adjudication. All related claims were in a single proceeding that would be completely resolved in either state or federal court. *Id.*

**[17]** As we noted above when examining the risk of piecemeal litigation, the Removed Action alone cannot justify dismissal of the Federal Action. Nevertheless, because other factors affirmatively support dismissal, we do not think it was improper for the court to consider its discretion to remand the Removed Action for the limited purpose of determining whether the Vulcan Action would resolve all claims between the parties. Like the source of law and the adequacy of state court proceedings, this factor may weigh in favor of jurisdiction, but it does not in itself weigh against it. Because the combined Vulcan Action and Removed Action would resolve all of the parties' claims, this factor does not bar dismissal.[10]

**[18]** Ultimately, "the decision whether to dismiss a federal action because of parallel state-court litigation" hinges on "a careful balancing of the [relevant] factors . . . with the balance heavily weighted in favor of the exercise of jurisdiction."

---

[10]In this case, the district court could be certain that the Vulcan Action and the Removed Action would be consolidated upon remand because the state court had already issued an order to this effect.

*Moses H. Cone*, 460 U.S. at 16. Although Street/National Union's right to a federal forum for their unasserted claims weighs in favor of jurisdiction, we conclude that the district court did not err by declining jurisdiction over the Federal Action. None of the factors that would preclude a *Colorado River* stay or dismissal—issues of federal law, inadequacy of the state court forum, or a possibility that the state court proceeding will not resolve the dispute—are concerns in this case. Because the avoidance of piecemeal litigation and the progress made in the Vulcan Action strongly weigh against jurisdiction, we conclude that the district court did not err by dismissing the Federal Action as an "exceptional" case under *Colorado River*.

## CONCLUSION

We do not take lightly the district court's decision not to entertain an action for damages. In this case, however, the district court did not abuse its discretion by deciding that the parties' claims should be resolved in the more comprehensive Vulcan Action. The district court had discretion under *Wilton/Brillhart* to remand the Removed Action, and the court's concerns about piecemeal litigation and interfering with the progress made in the Vulcan Action sufficiently supported dismissal under *Colorado River*.

**AFFIRMED.**