**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE SCOTTS COMPANY LLC, an
Ohio limited liability company,
          *Plaintiff-Appellant,*

          v.

SEEDS, INC., a Washington
corporation; MILLHORN FARMS,
INC., an Idaho corporation; MAPLE
LEAF FARMS, INC., a Washington
corporation; TIM FREEBURG, an
Idaho sole proprietor; MICA CREEK,
INC., a Washington corporation,
          *Defendants-Appellees.*

No. 11-35235

DC No.
2:10-cv-0327 LRS

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted
April 13, 2012—Seattle, Washington

Filed August 10, 2012

Before: Procter Hug, Jr., A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Tashima

---

**COUNSEL**

Colin Folawn, Schwabe, Williamson & Wyatt, Seattle, Washington, for the plaintiff-appellant.

Roger Sandberg, Esser & Sandberg, Pullman, Washington, for defendant-appellee Seeds, Inc.

Peter C. Erbland, Paine Hamblen, Coer d'Alene, Idaho, for defendants-appellees Millhorn Farms, Inc., Maple Leaf Farms, Inc., Mica Creek, Inc., and Tim Freeburg.

---

**OPINION**

TASHIMA, Circuit Judge:

Federal courts have broad authority to "look beyond the pleadings, and arrange" — or realign — "the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank of N.Y.*, 314 U.S. 63, 69 (1941) (internal quotation marks omitted). We hold that when a federal court evaluates

realigning the parties in a case, it may not consider claims made in a different case.

## I.

In September 2007, The Scotts Company ("Scotts") and Seeds, Inc. ("Seeds") entered into a Supply Agreement that obligated Scotts to buy cleaned and processed Kentucky Bluegrass seed from Seeds. The Supply Agreement allowed Scotts to audit Seeds to ensure Seeds' compliance with the terms of the Agreement. Scotts, an Ohio LLC, brought a diversity action against Seeds, a Washington corporation, in federal district court for breach of this audit provision.[1] Shortly after Scotts filed its federal action, Millhorn Farms, Inc., Maple Leaf Farms, Inc., Mica Creek, Inc., and Tim Freeburg ("Growers") sued Seeds and Scotts in Washington state court. Maple Leaf Farms and Mica Creek are both Washington corporations. Millhorn Farms is an Idaho corporation and Tim Freeburg, a sole proprietor, is a citizen of Idaho. In their state court complaint, the Growers alleged that in May 2008, Seeds added an addendum to each of their contracts, in which Seeds agreed to pay twenty cents per pound for Kentucky Bluegrass seed above the original contract price. The Growers alleged that Seeds failed to pay this additional twenty cents per pound for the 2009 harvest and that Seeds did not make a scheduled September 2010 payment. In its state court answer, Seeds alleged that it had not paid the Growers because it had not been paid by Scotts. Seeds also filed an amended cross-claim against Scotts for breach of contract and unfair and deceptive business practices.

---

[1]Scotts entered into a similar Supply Agreement with Dye Seed Ranch, Inc. ("Dye") and brought a parallel action against Dye in district court. The Scotts-Dye litigation proceeded in tandem with the Scotts-Seeds litigation and the appeal in that case, No. 11-35234, was consolidated with this case on appeal. Scotts and Dye voluntarily dismissed their dispute before oral argument.

After the Growers sued Seeds and Scotts in state court, Seeds moved to dismiss this federal action under Federal Rule of Civil Procedure Rule 12(b)(7), contending that the Growers were indispensable parties. In response, Scotts filed an Amended Complaint which added the Growers as defendants. The Amended Complaint sought a declaration that the audit is a condition precedent to Scotts' payment to Seeds, specific performance, and damages caused by Seeds' breaches of contract. It also sought a declaration that Scotts had not materially breached the Growers' contracts and that the Growers may not enforce the Supply Agreement. The Growers did not answer the Amended Complaint.

The Growers and Seeds moved the district court to realign the Growers as plaintiffs and Seeds and Scotts as defendants. Seeds also moved the court, in the alternative, to stay or dismiss the case in favor of the related state court proceedings. The district court granted both motions. The realignment stripped the district court of subject matter jurisdiction because defendant Seeds was not diverse to all of the now-plaintiff Growers. The district court alternatively held that it would stay the federal proceedings in favor of the related state court proceedings under either the *Brillhart* doctrine, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), or the *Colorado River* doctrine, *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Because the parties' realignment resulted in the absence of complete diversity of citizenship between defendant Seeds, on the one hand, and newly-aligned plaintiffs-Growers, on the other, the district court dismissed the action for lack of subject matter jurisdiction under Rule 12(b)(1). Scotts timely appealed.

## II.

A complaint's alignment of the parties "is not binding on the courts." *Dolch v. United Cal. Bank*, 702 F.2d 178, 181

(9th Cir. 1983). Instead, "[w]e must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.' " *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (quoting *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)). "This inquiry involves factual determinations of the type ordinarily left to the district court and reviewed for clear error." *Id.* at 872-73.

The district court realigned the parties because it found that Scotts' audit claim "is ancillary to the primary dispute that pits the Growers against Seeds . . . and in turn, against Scotts." After realignment, Washington citizens were on both sides of the dispute; consequently, diversity jurisdiction was destroyed. *See* 28 U.S.C. § 1332; *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008) ("Diversity jurisdiction requires complete diversity . . . .") (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)).

**[1]** In determining this "primary matter in dispute," the district court relied on claims made by the Growers in their state court action. It explained that "[a]ll of the disputes in this case . . . arise because the Growers have not been paid" and that, because the "Growers are the ultimate recipients of the funds at issue," they are "most adversely affected by the dispute." But the Growers had not answered Scotts' Amended Complaint in federal court, and they sought the disputed funds in state court. In response to Scotts' objection on this ground, the district court stated that "Scotts unduly narrows the scope of the inquiry regarding what constitutes the 'primary dispute' by focusing narrowly on the 'federal lawsuit.' " We hold that this was error. When considering the primary purpose of a federal case in a realignment inquiry, a court may not consider claims made in a different case.

This holding is consistent with our practice in past cases. In *Continental Airlines*, we analyzed the principal purpose of

McDonnell Douglas' federal declaratory judgment action against Continental Airlines and three other defendants that arose out of an airplane accident. 819 F.2d at 1523. In our analysis, we did not consider the claims in a state court suit arising out of the same accident that was brought by Continental Airlines against McDonnell Douglas and one of Continental Airlines' federal co-defendants. *See id.* at 1523 n.2 (considering the principal purpose of McDonnell Douglas' "federal suit"). Similarly, in *Prudential Real Estate Affiliates*, we evaluated a defendant's argument that her co-defendants should be realigned as plaintiffs by considering the conflicts among the parties with respect to the question presented in the federal suit. 204 F.3d at 873-74. In our analysis, we did not consider the claims made in a an ongoing related state suit brought by the defendant who sought realignment against her federal co-defendants. *Id.* The Third Circuit has also affirmed realignment based on answers filed in federal court by the realigned parties without considering arguments in related state court litigation. *See Emp'rs Ins. of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862, 866 (3d Cir. 1991).

This holding also avoids undermining the *Colorado River* doctrine. Under *Colorado River*, 424 U.S. at 813, and a subsequent line of cases, *see, e.g*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983), a federal court may stay a federal case in favor of a related state case only in exceptional circumstances. "The federal district courts ordinarily must apply the test outlined in *Colorado River* . . . in determining whether to stay federal proceedings in favor of pending state court proceedings concerning the same subject matter." *40235 Wash. St. Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir. 1992). If a district court could consider claims in related state cases in its primary purpose inquiry, such a flexible realignment doctrine could undermine the strict *Colorado River* test.

**[2]** The district court erred when it determined the primary purpose of this federal lawsuit by considering the claims

made in a different lawsuit. On remand, should the district court reconsider the realignment-of-parties issue, it should limit its inquiry of what constitutes the primary dispute to the primary purpose of this federal case.[2]

## III.

A district court may, in its discretion, stay or dismiss a federal case in favor of related state proceedings: (1) when an action seeks only declaratory relief, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-88 (1995) (discussing *Brillhart*, 316 U.S. at 494-95), or (2) when exceptional circumstances exist, *Moses H. Cone*, 460 U.S. at 14 (quoting *Colorado River*, 424 U.S. at 813). The district court in this case held that if it were not dismissing the case for lack of subject matter jurisdiction, it would stay the case pending resolution in state court for either reason.

We review both rulings for abuse of discretion. *See Wilton*, 515 U.S. at 289; *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir. 1990). We hold that the district court abused its discretion.

## A.

**[3]** A district court may, in its discretion, decline to hear a declaratory judgment action when a related case is pending in state court. *Wilton*, 515 U.S. at 289. But this discretionary jurisdictional rule does not apply to "[c]laims that exist independent of the request for a declaration." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998). These "independent" claims are instead evaluated

---

[2]Scotts also argues that the district court's consideration of the claims in the state court proceedings was erroneous because the state court case was commenced *after* the federal case. Because we hold that, in this case, the district court erred in considering the state court claims at all, we need not separately consider Scotts' later-in-time argument.

under the *Colorado River* doctrine. *Id.* In this context, a claim is independent if it "would continue to exist if the request for a declaration simply dropped from the case." *Id.* at 1168; *see also United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001).

**[4]** Scotts seeks both declaratory and non-declaratory relief in its Amended Complaint. Therefore, the district court was correct to evaluate whether Scotts' non-declaratory claim is independent of its declaratory claim. The district court correctly stated the independence rule, but it did not correctly apply that rule in its analysis. Instead, the district court analyzed whether the two sets of claims contained overlapping facts: it found that the request for an audit is the "driving force behind all other issues" and that Scotts will have a basis for its non-declaratory claims "[o]nly if that audit shows some improprieties." This approach is incorrect. *See United Nat'l Ins. Co.*, 242 F.3d at 1112 ("It appears the district court believed that, for purposes of this analysis, two claims are 'independent of' one another only if one can be resolved without disposing of the legal issues raised in the other . . . . We do not believe this is the proper analysis."). The district court abused its discretion when it applied the incorrect rule. *See Casey v. Albertson's Inc.*, 362 F.3d 1254, 1257 (9th Cir. 2004).

**[5]** Scotts' damages claim is independent because it would be viable without the declaratory claim. *Snodgrass*, 147 F.3d at 1168. "[W]hen other claims are joined with an action for declaratory relief . . . , the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (citation omitted). Therefore, the district court should not have declined to entertain the claim for declaratory relief under the *Brillhart* doctrine. Instead, these claims should have been evaluated under the *Colorado River* doctrine.

**B.**

Exceptional circumstances must be present for a district court to abstain from Scotts' independent non-declaratory judgment claim and its related declaratory judgment claims. *Colorado River*, 424 U.S. at 813; *also Moses H. Cone*, 460 U.S. at 16 ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.").

**[6]** In analyzing whether *Colorado River* applies, the district court stated that "[n]o showing of 'exceptional circumstances' is required to support a decision to abstain from hearing a declaratory relief action." The district court proceeded to consider the *Colorado River* factors without explicitly finding that exceptional circumstances were present. The district court abused its discretion because it failed to find exceptional circumstances before declining to exercise its jurisdiction. *See Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1256 (9th Cir. 1988) ("[T]he district court judge in this case must have exercised discretion within the 'exceptional circumstances' limits of the *Colorado River* abstention doctrine."). On remand, the district court shall consider whether exceptional circumstances exist that would justify declining to exercise its jurisdiction.

**IV.**

The judgment of the district court dismissing the case for lack of subject-matter jurisdiction is reversed and remanded for further proceedings. On remand, the district court may consider whether the parties should be realigned by evaluating the parties' interests with respect to the primary purpose of this case. If the district court reconsiders possible abstention, it should first determine whether exceptional circumstances exist under the *Colorado River* test, which would justify

declining to exercise its jurisdiction over this case. If it does not find the requisite exceptional circumstances, it shall proceed to hear the merits of this case.

**REVERSED and REMANDED.**