**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERNEST BOCK, LLC, | No. 22-15466 |
| *Plaintiff-Appellant*, | D.C. No. 2:19-cv-01065-JAD-EJY |
| v. | |
| PAUL STEELMAN, individually and as trustee of the Steelman Asset Protection Trust ("SAPT"), the Paul C. Steelman and Maryann T. Steelman Revocable Living Trust ("RLT"), and the Paul Steelman Gaming Asset Protection Trust; STEPHEN STEELMAN; SUZANNE STEELMAN-TAYLOR; MARYANN STEELMAN, individually and as trustee of the SAPT and RLT; COMPETITION INTERACTIVE, LLC; PAUL STEELMAN, LTD.; STEELMAN PARTNERS, LLP; PAUL STEELMAN DESIGN GROUP, INC.; SAPT HOLDINGS, LLC SERIES B; KEEPSAKE, INC.; SMMR, LLC; SMMR, LLC SERIES A-Z; SSSSS, LLC; SSSSS, LLC SERIES B; CHRISTIANIA, LLC; CHRISTIANIA, LLC SERIES A-Z; | OPINION |

JIM MAIN, as trustee of the SAPT;
AARON SQUIRES; MATTHEW
MAHANEY,

*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 6, 2023
Las Vegas, Nevada

Filed August 3, 2023

Before:  Richard R. Clifton, Jay S. Bybee, and Mark J.
Bennett, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

## *Colorado River* Stay

The panel reversed the district court's order staying, pursuant to *Colorado River Water Conservation District v. United States* (*Colorado River*), 424 U.S. 800 (1976), plaintiff Ernest Bock, LLS's action alleging that the defendants improperly transferred their assets to insulate them from an $11.8 million New Jersey state court judgment.

While Bock's federal suit was pending, a New Jersey appellate court vacated the underlying judgment and remanded for further proceedings to determine whether the defendants were liable to Bock. The district court then stayed this case pursuant to *Colorado River*, in part because it would be inefficient for the New Jersey litigation and the federal suit to proceed simultaneously.

The panel first concluded that Bock had standing to bring the suit because Bock raised a question of fact as to whether it was injured by the defendants' asset transfers.

Noting that a *Colorado River* stay is proper only in exceptional circumstances, the panel held that a *Colorado River* stay cannot issue when, as here, there was substantial doubt as to whether the state proceedings would resolve the federal action. Because *Colorado River* did not support a stay, neither could the district court's docket management authority.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

John F. Palladino (argued) and Evan M. Labov, Hankin Sandman Palladino & Weintrob PC, Atlantic City, New Jersey, for Plaintiff-Appellant.

Emily A. Ellis (argued), Frank M. Flansburg III, and Emily L. Dyer, Brownstein Hyatt Farber Schreck LLP, Las Vegas, Nevada; Jeffrey P. Luszeck and Roberto M. Campos, Solomon Dwiggins Freer and Steadman LTD, Las Vegas, Nevada; Joel E. Tasca, Ballard Spahr LLP, Las Vegas, Nevada; Paul Ort, Ballard Spahr LLP, Philadelphia, Pennsylvania; for Defendants-Appellees.

**OPINION**

BENNETT, Circuit Judge:

Plaintiff-Appellant Ernest Bock, LLC ("Bock") initially obtained an $11.8 million judgment for breach of contract against Defendants Paul and Maryann Steelman ("the Steelmans") in New Jersey state court. Bock then filed this federal suit in the District of Nevada, alleging that the Steelmans, assisted by other named Defendants, engaged in an elaborate series of allegedly improper asset transfers to insulate those assets from the New Jersey judgment.[1] But

---

[1] Under Nevada's version of the Uniform Fraudulent Transfer Act, a "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Nev. Rev. Stat. § 112.150(12).

while the federal suit was pending, a New Jersey appellate court vacated the underlying judgment and remanded for further proceedings, including discovery, to determine whether the Steelmans were liable to Bock.

The district court then stayed this case pursuant to *Colorado River Water Conservation District v. United States* (*Colorado River*), 424 U.S. 800 (1976).[2] The court first determined that both the state and federal lawsuits turn on the same question of New Jersey law —whether the Steelmans are liable for breach of contract. The court then stayed the federal case, in part because it would be inefficient for both suits to proceed simultaneously.

We must decide whether a *Colorado River* stay was proper. "Generally . . . the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Id.* at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The Supreme Court has made clear that a *Colorado River* stay is proper only in "exceptional circumstances." *Id.* at 813. Absent such circumstances, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Id.* at 817. "Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have *nothing further to do* in resolving any substantive part of the case." *Moses H. Cone Mem'l Hosp.*

---

As relevant to Bock's claims, that Act prohibits a debtor from making a transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor." *Id.* § 112.180(1)(a). One of the factors used to determine "actual intent" is whether "[b]efore the transfer was made . . . the debtor had been sued or threatened with suit." *Id.* § 112.180(2)(d).

[2] This type of stay is often referred to as *Colorado River* abstention. *See infra* Section IV.A.

*v. Mercury Constr. Corp.* (*Moses Cone*), 460 U.S. 1, 28 (1983) (emphasis added).

First, we conclude that Bock has standing to bring its federal court claims because it raised a question of fact as to whether it is injured by the Steelmans' asset transfers. Next, we hold that a *Colorado River* stay cannot issue when, as here, federal litigation will be fully resolved only if parallel state court proceedings end in one of several possible outcomes, though we acknowledge conflicting authority on the question. Finally, we reject Defendants' alternative argument that the district court's inherent docket management powers can justify a stay. Accordingly, we reverse the district court's order and remand for further proceedings.

## I. Background

In 2011, members of the Catanoso family[3] approached Bock, a Philadelphia-based construction company, seeking a loan to finance the purchase and renovation of an amusement pier in Atlantic City. Bock was initially skeptical about the Catanosos' liquidity and ability to post collateral. To resolve those concerns, the Catanosos engaged Paul Steelman, an acclaimed architect based in Las Vegas, to join the project. Collectively, they formed Steel Pier Associates, LLC ("SPA").[4] Bock agreed to make two loans to SPA in the form of commercial mortgage notes,

---

[3] The Catanosos are not parties in this case.

[4] It appears that Paul and the Catanosos also formed Cape Entertainment Associates, LLC ("CEA"). Bock's operative federal complaint alleges that CEA and SPA were both named borrowers on the second loan, which the Steelmans personally guaranteed in its entirety. For simplicity, we refer only to SPA as the parties do in their briefing.

each secured by a personal guarantee from Paul and his wife Maryann.[5]

It is undisputed that SPA was in default on both loans at least by March 2014.  In October 2015, Bock filed suit against the Steelmans in New Jersey Superior Court, seeking to enforce their guarantee of SPA's liability under the commercial mortgage notes.  Bock alleged that the Steelmans breached their contract by failing to honor the terms of the guaranty agreements and committed fraud by misrepresenting the net worth of their assets.  The Steelmans countered that Bock breached an implied covenant of good faith and fair dealing inherent in every contract subject to New Jersey law, by encouraging SPA to take on risky financial obligations that made repayment of the original loans by SPA impossible.[6]  *See Ernest Bock, LLC v. Steelman* (*Ernest Bock*), No. A-0469-19, 2021 WL 4771306, at \*6–7 (N.J. Super. Ct. App. Div. Oct. 13, 2021).  The Superior Court sided with Bock, entering summary

---

[5] The notes provided that Bock could sue to enforce SPA's repayment obligations in the event of default.  The notes defined default in part as: (1) SPA's "nonpayment when due of any amount payable under this Note"; (2) failure "to observe or perform any other existing or future agreement" between the parties; (3) insolvency, corporate mergers, or dissolutions; and (4) attempts to disclaim indebtedness.

The Steelmans' guarantees, in turn, constituted "guarantees as unconditional surety the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owing by [SPA] to [Bock]."  The guarantees purport to be "absolute and unconditional irrespective of: (1) any lack of validity or enforceability of any of the Loan Documents."

[6] The Steelmans also alleged that this behavior constituted "Tortious Interference with Prospective Financial Gain," and as a result, Bock's loans should be "recharacterized" as a purchase of an equity stake in SPA.

judgment against the Steelmans for more than $11 million. The Steelmans appealed.

Bock alleges that the Steelmans then began dispersing their assets through a complicated web of trusts and corporate entities intending to shield their wealth from the New Jersey judgment while also retaining ultimate control over their assets. Accordingly, Bock filed this lawsuit in the District of Nevada against the Steelmans, the trusts and entities in question, and several individuals who allegedly helped facilitate the contested transfers (collectively, "Defendants"). The lawsuit alleges that Defendants violated Nevada and federal laws by: (1) creating trusts with the intent to defraud creditors; (2) transferring property, assets, and interests with the intent to defraud creditors; (3) impermissibly using corporate alter egos to shield personal liability; and (4) violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

But while the federal suit was pending, the Appellate Division of the New Jersey Superior Court vacated the underlying judgment. *Ernest Bock*, 2021 WL 4771306, at *1. The court found that "summary judgment was prematurely granted before . . . discovery [was] completed," *id.*, because "if defendants prove that Bock . . . improperly impeded the ability of [SPA] to pay the loan debt, that improper conduct might excuse or justify defendants' non-payment of the guaranties," *id.* at *5. For this reason, the court "vacate[d] the trial court's grant of summary judgment and remand[ed] the matter for continued discovery under the trial court's supervision." *Id.* at *9. The New Jersey Supreme Court declined to review the Appellate Division's determination. *Ernest Bock, LLC v. Steelman*, 270 A.3d 1084 (N.J. 2022).

As there was no longer a judgment, Bock was no longer a judgment creditor of the Steelmans. Accordingly, both the New Jersey litigation and the federal suit were set to proceed in parallel. And both cases turn on the same threshold question of New Jersey state law: whether the Steelmans' guarantees are enforceable.[7] For this reason, the Steelmans sought to stay federal proceedings pending resolution of the New Jersey litigation, arguing that allowing the suits to proceed simultaneously would waste judicial resources and risk inconsistent judgments.[8] Bock opposed the stay, arguing that: (1) a stay could not be justified by either the court's docket management powers or the *Colorado River* doctrine; and (2) pausing the federal litigation would afford the Steelmans additional time to hide assets and thus shield them from Bock. In the alternative, Bock asked that if the district court were to issue a stay, it should also require Defendants, as a condition, to post $35.5 million bond. The district court issued a stay under *Colorado River* and declined to require a bond.

Bock timely appealed, arguing that this case does not present the "exceptional circumstances" required for a *Colorado River* stay. Defendants contend that: (1) a *Colorado River* stay was proper; (2) even if not, the district

---

[7] In the New Jersey action, the Steelmans cannot have actionably breached the guarantees if the guarantees are unenforceable. And in the federal action, the Steelmans' asset transfers can only be a fraudulent attempt to evade "creditor" Bock, if the guarantees are enforceable by Bock (because if not, Bock could not obtain a monetary judgment and become a judgment creditor).

[8] Initially, the Steelmans requested a stay pursuant to the district court's inherent docket management powers. The district court found that *Colorado River* authorized the stay. As discussed below, we find that neither supports a stay here.

court had the inherent docket management authority to issue a stay; and (3) without a valid New Jersey judgment, Bock lacks standing to bring its federal claims because it has not suffered an injury in fact.

## II.  Jurisdiction & Standards of Review

We have jurisdiction under 28 U.S.C. § 1291.**[9]**  Although the district court did not make an Article III standing determination, standing is a threshold jurisdictional requirement and "may be raised at any time during the proceedings, including on appeal." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citation omitted).  Thus, we determine de novo whether Bock has standing.

Our *Colorado River* analysis proceeds in two steps.  First, "[w]hether the facts of a particular case conform to the requirements for a *Colorado River* stay . . . is a question of law which we review de novo." *Smith v. Cent. Ariz. Water Conservation District*, 418 F.3d 1028, 1032 (9th Cir. 2005). Second, "[i]f we conclude that the *Colorado River* requirements have been met, we then review for abuse of discretion the district court's decision to stay . . . the action." *Seneca Ins. Co. v. Strange Land, Inc.* (*Seneca*), 862 F.3d 835, 840 (9th Cir. 2017) ..  "[H]owever, this standard is stricter 'than the flexible abuse of discretion standard used in other areas of law' because 'discretion must be exercised within the narrow and specific limits prescribed by the *Colorado River* doctrine.'" *R.R. Street & Co. Inc. v. Transp. Ins. Co.* (*R.R. Street*), 656 F.3d 966, 973 (9th Cir. 2011)

---

[9] Although a stay is generally not a final appealable order, a stay issued under *Colorado River* is immediately appealable. *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1201–02 (9th Cir. 2021).

(cleaned up) (quoting *Holder v. Holder*, 305 F.3d 854, 863 (9th Cir. 2002)).

Finally, we review for abuse of discretion whether a district court properly stayed an action pursuant to its inherent docket management powers, "but this standard is 'somewhat less deferential' than the abuse of discretion standard used in other contexts." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105 (9th Cir. 2005) (quoting *Yong v. INS*, 208 F.3d 1116, 1119 (9th Cir. 2000)).

## III. Standing

To establish standing, "a plaintiff must satisfy three 'irreducible constitutional minimum' requirements: (1) he or she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Bellon*, 732 F.3d at 1139–40 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Defendants claim that without a New Jersey judgment, Bock cannot establish an injury in fact because the Steelmans are not legally obligated to pay the guarantees. But plaintiffs need only establish each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*.[10]

---

[10] "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (citation omitted) (quoting Fed. R. Civ. P. 56(e)).

Here, Bock has at least raised a question of fact as to the enforceability of the guarantees. *See Ernest Bock*, 2021 WL 4771306, at *8 (recognizing "material factual disputes" as to enforceability). If the guarantees *are* enforceable, Bock would be injured by any fraudulent efforts to shield the Steelmans' assets from Bock, which would again become a judgment creditor. Thus, Bock has sufficiently alleged an injury in fact at this stage of the litigation.

IV. *Colorado River*

A. Standard

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River*, 424 U.S. at 817 (quoting *McLellan*, 217 U.S. at 282). However, the Supreme Court has identified several instances in which it is appropriate for a federal court to abstain from exercising its jurisdiction. *See, e.g.*, *id.* at 813–17 (discussing traditional abstention doctrines). As relevant here, in *Colorado River*, the Supreme Court recognized that in "exceptional circumstances," *id.* at 813, "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" can support a stay of federal litigation in favor of parallel state proceedings, *id.* at 817 (alteration in original) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

The Court was careful to distinguish *Colorado River* stays from traditional abstention doctrines. While traditional forms of abstention rest on "considerations of proper constitutional adjudication and regard for federal-state relations," *Colorado River* stays are based on administrative

concerns and prioritize efficient "disposition of litigation" through the wise deployment of "judicial resources," *id.* (quoting *Kerotest Mfg.*, 342 U.S. at 183).[11]  Following this distinction, we have recognized that "*Colorado River* is not an abstention doctrine, though it shares the qualities of one." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2021); *see also Nakash v. Marciano*, 882 F.2d 1411, 1415 & n.5 (9th Cir. 1989) (citation omitted) ("Although [*Colorado River* is] commonly referred to as an abstention doctrine, the Supreme Court has flatly rejected this categorization.").

No matter how the *Colorado River* doctrine is formally characterized, however, one principle is clear: a stay of federal litigation in favor of state court proceedings "is the exception, not the rule." *Colorado River*, 424 U.S. at 813. "Only the clearest of justifications will warrant" a stay, *id.* at 819, and the circumstances justifying a stay are "exceedingly rare," *Smith*, 418 F.3d at 1033.

---

[11] *See also Moses Cone*, 460 U.S. at 14–15 (distinguishing *Colorado River* from traditional abstention doctrines, which rest on "considerations of state-federal comity or on avoidance of constitutional decisions").  We note that scholars are divided as to whether a distinction between federalism and administration is a sensible basis for delineating forms of federal abstention.  *Compare* James C. Rehnquist, *Taking Comity Seriously: How to Neutralize the Abstention Doctrine*, 46 Stan. L. Rev. 1049, 1094 (1994) (the "dichotomy between administration and federalism wholly overlooks the friction that inheres in duplication [of state and federal proceedings] itself"), *with* Martin H. Redish, *Intersystemic Redundancy and Federal Court Power: Proposing a Zero Tolerance Solution to the Duplicative Litigation Problem*, 75 Notre Dame L. Rev. 1347, 1374 (2000) ("[D]uplicative litigation is wasteful, burdensome, inefficient, and often harassing . . . .  No consideration of litigant choice or judicial federalism should be allowed to outweigh this overriding interest.").

This court weighs eight factors to determine whether a *Colorado River* stay is justified:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*R.R. Street*, 656 F.3d at 978–79 (citing *Holder*, 305 F.3d at 870). "The factors are not a 'mechanical checklist.' We apply the factors 'in a pragmatic, flexible manner with a view to the realities of the case at hand. The weight to be given to any one factor may vary greatly from case to case.'" *State Water Res. Control Bd.*, 988 F.3d at 1203 (citations omitted) (quoting *Moses Cone*, 460 U.S. at 16, 21). "Some factors may not apply in some cases," but in other cases, "a single factor may decide whether a stay is permissible." *Id.* (cleaned up). "The underlying principle guiding this review is a strong presumption *against* federal abstention." *Seneca*, 862 F.3d at 842 (emphasis added). "Any doubt as to whether a factor exists should be resolved against a stay, not in favor of one." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

Our first task is to review de novo whether, in light of the eight factors enumerated above, the facts here "conform to the requirements for a *Colorado River* stay." *Seneca*, 862 F.3d. at 840 (quoting *Smith*, 418 F.3d at 1032). Here, the district court concluded that factors three (piecemeal litigation), four (order of obtaining jurisdiction), and eight (parallelism) "militate decisively in favor of abstention." The court weighed factor seven (forum-shopping) "slightly in favor of retaining federal jurisdiction," and concluded that all other factors were "neutral."

### B. Piecemeal Litigation & Order of Obtaining Jurisdiction

We agree that the piecemeal litigation and order of jurisdiction factors support a stay.[12] Allowing both the New Jersey state action and Nevada federal suit to proceed simultaneously will duplicate judicial efforts to resolve the common question of whether the Steelmans' personal guarantees are enforceable. And there is a risk that the courts will reach different results.[13] Accordingly, parallel

---

[12] We also agree that factors one, two, five, six, and seven are neutral or inconsequential. Neither the federal nor the state court has exercised jurisdiction over property, and there is no obvious forum shopping or reason to suspect that either court is incapable of fairly adjudicating the issues before it. There is also no indication that the federal forum is inconvenient. And while "[t]he presence of federal-law issues must always be a major consideration weighing *against* surrender'" of federal jurisdiction, *Moses Cone*, 460 U.S. at 26 (emphasis added), the existence of a common threshold issue of New Jersey state law in both the state and federal proceedings renders factor five largely irrelevant.

[13] We acknowledge that the decision of the New Jersey court could have preclusive effect in federal court. But if the New Jersey courts ultimately determine that the Steelmans' guarantees are enforceable, additional federal litigation will be required to determine liability for fraudulent

proceedings could waste judicial resources and cause confusion in the continuing disputes between the parties. *See R.R. Street*, 656 F.3d at 979–80 (identifying duplication of efforts and possibility of differing results as the primary concerns of the piecemeal litigation factor).[14]

Factor four requires us to consider "the order in which the [state and federal] forums obtained jurisdiction." *Id.* at 978. But under this factor, "courts are instructed not simply to compare filing dates, but to analyze the progress made in each case." *Seneca*, 862 F.3d at 843. Here, New Jersey courts have issued not one, but two (differing) reasoned opinions on the common issue of the enforceability of the Steelmans' guarantees. *See Ernest Bock*, 2021 WL 4771306, at *2. Most recently, the Appellate Division held that material factual disputes precluded summary judgment for Bock, at least without further discovery. *Id.* at *5–9. By contrast, the federal district court has not yet even entertained a summary judgment motion on the issue. Thus, the New Jersey courts have made more progress on resolving the common legal issue in this case.

---

transfer whether or not the state court's decision is preclusive. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 & n.5 (9th Cir. 1993). Accordingly, preclusion doctrines do not eliminate the risk of continued litigation in federal court.

[14] Some of our cases have noted that the mere existence of piecemeal litigation is not sufficient on its own to warrant a stay. *See, e.g.*, *Seneca*, 862 F.3d at 842–43 ("A general preference for avoiding piecemeal litigation is insufficient to warrant abstention . . . . Instead, there must be exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic.").

C.  Parallelism

We do not agree with the district court that the parallelism factor supports a stay.  To the contrary, we find that because the federal and state proceedings are not sufficiently parallel, a *Colorado River* stay may not issue.

Parallelism is a threshold requirement for a *Colorado River* stay:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.  If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.  Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses Cone*, 460 U.S. at 28 (citations omitted).  The Court reiterated that "a district court normally would expect the order granting the [*Colorado River*] stay to settle the matter for all time."  *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 277 (1988).  "[T]he granting of a *Colorado River* [stay] necessarily implies an expectation that the state court will resolve the dispute."  *Id.* at 278.  Applying these principles, we have recognized that "[p]arallelism is necessary but not sufficient to counsel in favor of abstention."  *Seneca*, 862 F.3d at 845.  But "exact parallelism . . . is not required.  It is enough if the two

proceedings are 'substantially similar.'" *Nakash*, 882 F.2d at 1416 (citations omitted).

Here, the question we face is whether state and federal proceedings are sufficiently parallel when the state court proceedings will fully resolve the federal case *only if* the state court rules in one of two ways. As discussed above, if the Steelmans' guarantees are *not* enforceable, then the federal claims are completely barred, as there would be no New Jersey judgment for Bock, and thus no fraudulent transfer of assets to avoid that non-existent judgment.[15] But if the guarantees *are* enforceable, the federal court must proceed to determine whether Defendants fraudulently transferred assets to avoid paying Bock on the valid guarantees.

We recognize that there is some tension in our decisions under such circumstances. In *Nakash*, we affirmed a *Colorado River* stay in a dispute between two competing business families, the Nakashes and the Marcianos. 882 F.2d at 1412–13. The Marcianos sued the Nakashes in California state court, bringing a litany of claims. Although the Nakashes filed a cross-complaint in state court, they ultimately dismissed it and brought an action in federal court instead, seeking to enjoin further state proceedings. *Id.*[16] We affirmed a *Colorado River* stay of the federal case, even after acknowledging that "[t]he state action focuses on the

---

[15] We recognize that the district court may have authority to grant injunctive or other relief to prevent the fraudulent transfer of assets in anticipation of a *potential* judgment. But if either the district court or New Jersey courts determine that the guarantees are unenforceable, then Bock's federal court claims necessarily fail.

[16] The Nakashes withdrew their cross-complaint in state court on the same day they filed their federal complaint. *Nakash*, 882 F.2d at 1413.

Nakash[es'] wrongdoing while their [federal] complaint alleges wrongdoing by the Marcianos." *Id.* at 1416; *see also Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1170 (9th Cir. 2017) (citations omitted) ("In *Nakash* . . . the suits were sufficiently parallel because they concerned the same relevant conduct and named the same pertinent parties. The parallelism requirement was met even though additional parties were named in the state suit, the federal suit included additional claims, and the suits arguably focused on different aspects of the dispute."). Thus, we affirmed a *Colorado River* stay even after implicitly recognizing that the state court proceedings might not fully resolve the federal case.

Moreover, in *Bakie*, we reversed the district court's denial of a *Colorado River* stay when the parties contested the validity of mining claims owned by the defendant. 867 F.3d at 1163. In a Montana state court lawsuit, a mining company sought a declaratory judgment that the defendant's claims were invalid, which would have cleared the way for the company to mine the land. *Id.* But after the state court upheld the validity of the claims in a non-final interlocutory order, *id.* at 1164, the company sued in federal court, "seeking to condemn [the land] for public use easements and rights of way," allowing it to mine the land notwithstanding defendant's valid claims, *id.* at 1163. The district court denied defendants' motion to stay the action pending final resolution of the Montana state court proceedings, finding "that the state court proceedings were not sufficiently parallel to the federal" condemnation action. *Id.* at 1165. Instead, the district court condemned the land and awarded the company a public easement. *Id.*

We reversed, holding that the district court abused its discretion by denying a *Colorado River* stay. *Id.* at 1163. When addressing the parallelism requirement, we relied

heavily on *Nakash*'s instruction that "exact parallelism" is not required.  *Id.* at 1170 (quoting *Nakash*, 882 F.2d at 1416).  We explained that the federal condemnation and state validity proceedings were sufficiently parallel "because they both concern rights to the [same land], name the same pertinent parties, and attempt to accomplish the same goal (namely extinguishing the Defendants' rights to the [land])."  *Id.*   Although we did not explicitly make this determination in *Bakie*, it appears at least possible that if the Montana court entered a final order affirming the validity of defendant's claim, the district court would still have had to make its condemnation determination.   Thus it is possible that, as here, the state court case would have fully resolved the federal litigation only if the state court reached one of two possible outcomes.   Both *Nakash* and *Bakie* then, could be read as suggesting that a *Colorado River* stay may issue even if parallel state proceedings may not fully resolve a federal case.

However, in another line of cases, we have expressly held that a "substantial doubt" about whether continued federal litigation would be necessary after resolution of state proceedings *precludes* a stay.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912–13 (9th Cir. 1993).  In *Intel*, the parties were engaged in a copyright infringement dispute over intellectual property.  *Id.* at 910–12.   The district court stayed federal proceedings under *Colorado River* pending resolution of a state court action reviewing the propriety of an arbitrator's award of a license to use the disputed intellectual property.  *Id.*  We reversed, explaining that the "concurrent state court proceedings w[ould] resolve all the issues in [the federal case] *only* if the arbitration award [was] confirmed."  *Id.* at 913 & n.5.  "In contrast, if the state court overturn[ed] the arbitration award, then the case

w[ould] return to federal court for the adjudication of the underlying copyright claims." *Id.* at 913 & n.6. Applying *Moses Cone*, we found a "substantial doubt as to whether the state proceedings w[ould] resolve the federal action." *Id.* We found such a "substantial doubt" to be "dispositive," concluding that it was "sufficient to preclude a *Colorado River* stay." *Id.* Thus, we found that where one of two possible state court rulings would necessitate additional litigation in a parallel federal case, a *Colorado River* stay could not issue.

Although few of our subsequent cases appear to confront these exact factual circumstances, we have repeatedly affirmed *Intel*'s logic. *See, e.g.*, *State Water Res. Control Bd.*, 988 F.3d at 1204 ("We have repeatedly emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the entire case before the federal court."); *Holder*, 305 F.3d at 859 ("In this Circuit, the narrow *Colorado River* doctrine requires that the pending state court proceeding resolve all issues in the federal suit."); *Smith*, 418 F.3d at 1033 (same); c*f. R.R. Street*, 656 F.3d at 982 (affirming *Colorado River* stay when all parties agreed that a state case would "resolve all issues raised in the Federal Action").**[17]**

---

[17] We acknowledge that when a case is "controlled by contradictory precedents . . . the appropriate mechanism for resolving an irreconcilable conflict is . . . [a] call for en banc review." *Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc). But "[i]t is our obligation, nonetheless, to reconcile [conflicting precedents], if possible, so as to avoid an intracircuit conflict necessitating en banc consideration." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) (citation omitted).

We cannot say that the tension between *Intel*, *Nakash*, *Bakie*, and their progeny is irreconcilable as applied here. First, unlike this case, it is not

Other circuits have also adopted disparate approaches. For example, the Third Circuit has explained that:

> As the Supreme Court pointed out in *Moses H. Cone*, the *Colorado River* doctrine applies only if there is parallel state court litigation involving the same parties and issues that will completely and finally resolve the issues between the parties . . . . In other words, because of the requirement of a parallel state court proceeding, stays entered under the authority of *Colorado River* will normally have the effect of putting the plaintiff 'effectively out of federal court' and surrendering jurisdiction to the state tribunal.

*Marcus v. Abington*, 38 F.3d 1367, 1371–72 (3d Cir. 1994) (citations omitted).[18]   In another case, a *Colorado River*

---

clear that the state court proceedings in *Bakie* and *Nakash* could result only in binary outcomes, one of which would require federal litigation. Second, the panels in *Nakash* and *Bakie* did not find a "substantial doubt" that state proceedings would fail to resolve all federal issues. Because we find such a "substantial doubt" in this case, *Moses Cone* precludes a stay. *See Intel*, 12 F.3d at 912–13. Finally, because *Colorado River* requires balancing several non-exclusive factors, *Nakash* and *Bakie* would not control the outcome of this case even if we found that the parallelism factor did not preclude a stay. Thus, any tension between our precedents does not definitively control the outcome of this case.

[18] In *Marcus*, the Third Circuit ultimately dismissed the appeal for lack of jurisdiction after concluding that the district court's stay merely "delay[ed] the federal adjudication" rather than "deprived the federal plaintiff of a federal adjudication to which he or she may be entitled." 38 F.3d at 1372. But that case is procedurally distinct from this one because the court previously explained that federal litigation would remain *no matter* how the state court ruled. *See id.* at 1370–71 ("Once

dismissal was improper when a party "may at some point still be entitled to a federal forum for its diversity action" if the state court ruled in a certain way. *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 134 (3d Cir. 1988).[19]

But the Seventh Circuit is more permissive. In one recent case, that court summarized two prior decisions in which a "plaintiff in concurrent state and federal actions raised claims in the federal court that would have been fully resolved if the state court ruled one way, but only partially addressed if the state court ruled in the other direction. Nevertheless, [the Seventh Circuit] held that the state and federal actions were parallel" such that a *Colorado River* stay could issue. *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 649 (7th Cir. 2021) (discussing *Freed v. JP Morgan Chase Bank, N.A.*, 756 F.3d 1013 (7th Cir. 2014) and *Lumen Constr., Inc. v. Brant Constr., Co.*, 780 F.2d 691 (7th Cir. 1985)). The court declined to "read *Moses Cone* as establishing rigid criteria for stay orders." *Id.* at 646.

In the context of this case, we conclude that the *Intel* and the Third Circuit approach is most consistent with the Supreme Court's instruction in *Moses Cone* that "it would be a serious abuse of discretion to grant [a *Colorado River*] stay" if there is "any substantial doubt" as to whether "parallel state-court litigation will be an adequate vehicle for

---

the stay is lifted, the state court's disposition of the criminal proceeding will have a negligible impact on the subsequent federal adjudication . . . . [N]either side will be foreclosed by collateral estoppel with respect to the federal issues.").

[19] The *Callison* court ultimately agreed that a *Colorado River* stay, rather than dismissal, was proper, but only because Congress evinced a clear policy preference to litigate certain parallel securities law issues in state court. 844 F.2d at 136–37.

the *complete* and prompt resolution of the issues between the parties." 460 U.S. at 28 (emphasis added). Indeed, the Court explained that a *Colorado River* stay "necessarily contemplates that the federal court will have *nothing further to do* in resolving any substantive part of the case." *Id.*; *see also Gulfstream Aerospace Corp.*, 485 U.S. at 278 ("[T]he granting of a *Colorado River* [stay] necessarily implies an expectation that the state court will resolve the dispute. . . ."). When one possible outcome of parallel state court proceedings is continued federal litigation, we find a "substantial doubt" that the state court action will provide a "complete and prompt resolution of the issues," because the federal court may well have something "further to do." *Moses Cone*, 460 U.S. at 28.

Here, because additional federal litigation would be necessary if the New Jersey courts enforce the Steelmans' guarantees, we have a "substantial doubt as to whether the state proceedings will resolve the federal action." *Intel*, 12 F.3d at 913 (relying on *Moses Cone*, 460 U.S. at 28). As both the Supreme Court and our court have held, such a doubt "precludes the granting of a stay" under *Colorado River*. *Id.*[20]

---

[20] We note that our holding is consistent with the general rule that "exact parallelism . . . is not required." *See Nakash*, 882 F.2d at 1416. The issues and parties in parallel state proceedings need not be identical so long as they are "substantially similar." *Id.* For example, a *Colorado River* stay could still be warranted if parallel state proceedings involve additional parties or claims, as long as the state court will necessarily resolve all issues between parties in the federal action. *See R.R. Street*, 656 F.3d at 982–83 (finding sufficient parallelism even where parallel cases did not involve identical parties because the parties in the federal suit agreed that the state action would "resolve all issues raised in the

Although we are sympathetic to the prudential concerns that the district court weighed in favor of a stay,[21] we conclude that the federal and state proceedings are not sufficiently parallel to justify abdication of federal jurisdiction.[22]

## V.  Docket Management Stay

Finally, Defendants argue that even if the *Colorado River* stay was improper, the district court had the inherent authority to stay federal proceedings pursuant to its docket management powers.  The Supreme Court first recognized this authority in *Landis v. North American Co.*, 299 U.S. 248 (1936), explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254.  We have since identified three non-exclusive factors courts

---

Federal Action").  We simply find a substantial doubt in this case that New Jersey state proceedings will completely resolve the federal action.

[21] At oral argument, counsel discussed alternatives to a stay that might resolve some of these concerns.  *See* Oral Arg. at 8:20–9:05, 21:50–26:30.  For example: (1) Defendants could post a bond to ameliorate concerns about asset transfers; (2) the district court might have authority to enjoin future asset transfers; or (3) the parties could stipulate to jurisdiction and venue over the federal claims in New Jersey state court, ensuring resolution of all disputes in one court.  On remand, we encourage the parties and the district court to explore these and other alternatives that could resolve or ameliorate the administrative concerns identified by the district court.  However, we find that these concerns are not sufficient to set aside the district court's "virtually unflagging obligation" to exercise jurisdiction.  *Colorado River*, 424 U.S. at 817.

[22] Because we conclude that the district court's error in applying the *Colorado River* factors is dispositive, we need not proceed to abuse of discretion review.  *See Seneca*, 862 F.3d at 840.

must weigh when deciding whether to issue a docket management stay: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Here, the parties contest whether these factors support a stay. But as the district court recognized, "because this case involves simultaneous and related federal and state actions, the proper analysis is under *Colorado River*, not *Landis*." We have held that "[a] district court may, in its discretion, stay or dismiss a federal case in favor of related state proceedings" in only two circumstances: "(1) when an action seeks only declaratory relief, or (2) when exceptional circumstances exist [under *Colorado River*]." *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012) (internal citations omitted). We suggested that to expand the scope of permissible stays beyond these contexts would "undermin[e] the *Colorado River* doctrine." *Id.*

Following this principle, we join other circuits to expressly hold that the *Colorado River* factors control whether a stay can issue in favor of parallel state proceedings. *See, e.g.*, *Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013) ("To permit a district court to rely solely on its inherent power to control its docket, when the effect of the district court's order is to accomplish the same result contemplated by *Colorado River*, would allow a court to bypass the rigorous test set out by the Supreme Court."); *Evans Transp. Co. v. Scullin Steel Co.*, 693 F.2d 715, 717 (7th Cir. 1982) ("[I]t is not enough, to justify abstention, that

a failure to stay the federal suit may result in judicial diseconomy—in having two active lawsuits instead of one.").[23]  A docket management stay may not issue in favor of parallel state proceedings if the *Colorado River* factors do not support a stay.  *See Scotts Co. LLC*, 688 F.3d at 1158. Because *Colorado River* does not support a stay, neither can the district court's docket management authority.

## VI. Conclusion

Following the Supreme Court's instruction in *Moses Cone*, we cannot uphold a stay as the New Jersey proceeding may not fully resolve the issues pending before the district court.

**REVERSED** and **REMANDED.**[24]

---

[23] *See also AIIRAM LLC v. KB Home*, No. 19-CV-00269-LHK, 2019 WL 3779185, at *6 (N.D. Cal. Aug. 12, 2019) (reaching the same result but noting that "the Ninth Circuit has not spoken to th[is] precise question").

[24] The parties shall bear their own costs on appeal.